Argued and submitted January 18,
affirmed May 19, reconsideration denied July 31,
petition for review allowed October 14, 1980

BRADFORD,
aka Groner,
*Appellant,*
*v.*
DAVIS, et al,
*Respondents.*

(No. A7810-16902, CA 14381)

611 P2d 326

Alan Baily, Legal Aid Service, Portland, and Robert Walker, National Center For Youth Law, San Francisco, argued the cause for appellant. With them on the briefs were Michael H. Marcus, Legal Aid Service, Portland, Julie H. McFarlane, Certified Law Student, Legal Aid Service, Portland, and Abigail English, National Center For Youth Law, San Francisco.

Jan K. Kitchel, Portland, argued the cause for respondents. With him on the brief were Ridgeway K. Foley, Jr., Kenneth E. Roberts, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

Plaintiff seeks to recover for physical and emotional injuries allegedly suffered while he was in the legal custody of the Children's Services Division of the Department of Human Resources (CSD). This is an appeal from an order of the trial court allowing defendants' demurrer and dismissing plaintiff's complaint. Following is a summary of the facts as they are alleged in the complaint.

Plaintiff, who was 17 years old when suit was filed on October 17, 1978, became a ward of Multnomah County shortly before his fourth birthday in 1964. He was released to the custody of CSD's predecessor, the Family and Children's Services Department of the Public Welfare Division, in 1968, after both of his parents had signed adoptive release forms. From September 10, 1968, until October 7, 1977, when he was committed to MacLaren Training School, plaintiff continuously resided in foster homes where he was placed by CSD.

The complaint alleges that from March, 1969, until August, 1973, plaintiff remained in a foster home where he suffered both physical abuse and neglect.

The complaint further alleges that these physical injuries as well as emotional injuries described therein were the result of acts and omissions of defendants which are set out in four causes of action. Plaintiff's allegations are essentially as follows:

1) That, in discharging statutory or other responsibilities, defendants, except defendant Spencer who is described as Manager of CSD's Adoption Unit, have "failed properly to exercise that degree of professional skill required of ordinary, prudent social workers, caseworkers, supervisors, and administrators * * *." The cause of action goes on to list a series of acts and

omissions of defendants during the time that plaintiff was in the foster home where he was allegedly abused. This list is set forth in the margin.[1]

2) That, in discharging statutory and other responsibilities, defendants have "failed to take reasonable actions to find plaintiff an adoptive home."[2]

---

[1]

"(a)   CSD failed to screen psychologically Mr. and Mrs. Barnes for fitness as foster parents;

"(b)   CSD failed to offer any caseworker services to plaintiff and his foster parents for a period of three years, during which time plaintiff was being abused;

"(c)   During the entire period plaintiff was placed with the Barnes family, CSD failed properly to supervise this foster placement;

"(d)   CSD ignored plaintiff's efforts to inform them of the abuse, mistreatment, and neglect he was subjected to in the Barnes' home;

"(e)   CSD failed to investigate a report of abuse and neglect registered with them by a third party;

"(f)   CSD failed promptly to remove plaintiff from the Barnes' home once they became aware that plaintiff was being abused, mistreated, and neglected there; and

"(g)   CSD failed to inquire of plaintiff or in any other manner investigate concerning plaintiff's treatment in foster placement."

[2] The second cause of action states in relevant part:

"53.   In discharging their duties and responsibilities imposed by statute and otherwise, defendants have failed to take reasonable actions to find plaintiff an adoptive home. In discharging their professional duties, defendants, their agents and employees, failed to exercise that degree of professional skill required of ordinary, prudent social workers, caseworkers, supervisors, and administrators, as demonstrated by, but not limited to, the following acts and omissions:

"(a)   CSD placed plaintiff in the home of Mr. and Mrs. Barnes for more than four years, but defendants failed to follow normal procedures in screening and requesting plaintiff's foster parents to adopt him; failed to make any contact whatsoever with plaintiff or his foster parents for a period of three years between approximately 1970 and 1973; failed to remove plaintiff from said foster home despite plaintiff's own requests to be placed in a pre-adoptive home; failed to remove plaintiff from said foster home despite statements by Mrs. Barnes that Mr. Barnes would not consent to adopt plaintiff because of his mixed racial heritage; and failed to remove plaintiff from said foster home and failed to place plaintiff in a suitable pre-adoptive home when CSD

3) That defendant CSD breached a third party beneficiary contract with plaintiff's parents in which CSD promised to find plaintiff an adoptive home in consideration for the parents' relinquishment of their parental rights.[3]

4) That defendants, except defendant Spencer who had responsibility for plaintiff's case after 1972, contrary to their statutory obligation, failed to report and investigate a complaint which they received from a third party in 1972 about the mistreatment of plaintiff in his foster home.[4]

---

knew, or reasonably should have known, that Mr. and Mrs. Barnes did not intend to adopt plaintiff, and were not fit to adopt plaintiff.

"(b) CSD placed plaintiff in the foster home of Mr. and Mrs. Andrew Groner, and permitted plaintiff to remain there for approximately three years, although CSD knew the Groners did not intend to adopt plaintiff. During this time, CSD made no attempt to find plaintiff a suitable adoptive home.

"(c) Since October 7, 1977, plaintiff has been committed to Mac-Laren Training School. During this time, up to and including the date of the filing of this complaint, CSD has made no attempt to find plaintiff a suitable adoptive home to be placed in after his release.

"54. But for the acts and omissions of defendants, plaintiff would have been adopted."

[3] The third cause of action states in relevant part:

"63. Defendant CSD entered into a contract with plaintiff's parents in which, in consideration for the parents' relinquishment of their parental rights, defendant CSD agreed to find plaintiff an adoptive home. Plaintiff's natural parents relied upon defendant CSD's representations that defendant CSD would find plaintiff an adoptive home and that plaintiff would be adopted. But for the aforesaid representations by defendant CSD, plaintiff's parents would not have agreed to relinquish their rights to the custody and control of plaintiff. Plaintiff is a third-party beneficiary of this contractual arrangement. At all times subsequent to the aforesaid agreement, plaintiff has been in the legal custody of CSD. Defendant CSD has breached this contract by failing to find plaintiff an adoptive home and by failing to exercise reasonable efforts to find him an adoptive home."

[4] The fourth cause of action states in relevant part:

"66. Defendants, their agents and employees, at all times relevant herein, have been public officials obligated by statute to make a report when any child they come into contact with has suffered abuse.

The allegations contained in the four causes of action are supplemented by similar, and at times more detailed, statements contained in a section at the beginning of the complaint entitled "Chronological Statement." This material is incorporated by reference into each of the causes of action.

Defendants' demurrer and supporting memorandum contended, *inter alia,* that all of plaintiff's allegations fell under the Tort Claims Act, ORS 30.260 *et seq.,* that the court lacked jurisdiction over the subject matter because plaintiff had failed to give proper tort claim notice, that the plaintiff had failed to commence the action within the time limit set by the Tort Claims Act and that defendants were immune from liability under the Tort Claims Act because their actions were discretionary.[5]

The trial court sustained the demurrer, concluding that all of the causes of action were essentially tort actions governed by the Tort Claims Act, and that plaintiff had failed to allege facts showing the sufficiency of notice under ORS 30.275 and, therefore, had not brought himself within the scope of the act.

## I

Before discussing the applicability and requirements of the Tort Claims Act,[6] it is necessary for us to

---

In September of 1972, the Division and named defendants then in its employ received a complaint concerning plaintiff's abuse in his foster home. Despite the fact that the Division and named defendants then and subsequently in its employ had reasonable cause to believe that plaintiff was being abused, the Division and named defendants then and subsequently in its employ failed to investigate the complaint; failed to make a report of the abuse; and failed to remove plaintiff from a home which in fact was abusive."

[5] Defendants also contended below that plaintiff lacked capacity to sue and that there was a defect of parties. Those contentions are not reargued before this court.

[6] We express no opinion as to whether additional challenges other than those founded in the Tort Claims Act might be raised against any of the causes of action in the complaint.

determine whether the trial court correctly characterized plaintiff's third cause of action — which is labeled a breach of contract by the complaint — as a tort.

As the Supreme Court stated in *Lindemeier v. Walker,* 272 Or 682, 538 P2d 1266 (1975), "It is the gravamen or the predominant characteristic of the action, not plaintiff's election, which governs whether the action is one in contract or tort." 272 Or at 685.

Plaintiff's third cause of action alleges that CSD breached an agreement with plaintiff's parents by "failing to find plaintiff an adoptive home and by failing to exercise reasonable efforts to find him an adoptive home." Plaintiff's second cause of action makes essentially the same allegation, but couches it in terms of a statutory, rather than a contractual, duty.

In *Lindemeier,* an allegation that defendant real estate broker breached its employment contract with plaintiff by intentionally failing to make any effort to obtain a sale to the best advantage of plaintiff was recharacterized as a tort action because it was essentially based on the broker's duty as a fiduciary to act in good faith.

In *Bales for Food v. Poole,* 246 Or 253, 424 P2d 892 (1967), a contract action against an architect was recharacterized as a tort where the action was based on the architect's failure to use due care in carrying out an agreement to prepare plans for a shopping center.

Malpractice actions such as these have consistently been held to sound in tort because "the duty and liability arises [*sic*] from the relation of the parties under the contract, rather than from the contract itself." *Dowell v. Mossberg,* 226 Or 173, 181, 359 P2d 541 (1961). (Medical malpractice alleged as breach of employment contract.)

In *Securities-Intermountain v. Sunset Fuel,* 40 Or App 291, 594 P2d 1307 *rev allowed* (1979), the nonperformance of a particular contractual obligation by defendant subcontractor was held to be "so closely akin to the other causes pleaded and to the claims reviewed and held tortious in *Bales for Food, supra,* * * * [and other malpractice cases cited in *Securities-Intermountain*] that we are constrained to say that the gravamen of the * * * cause of action * * * is tort. * * *" 40 Or App at 297.

The above-cited cases all deal with the characterizing of cases as tort or contract for general statute of limitation purposes. However, we hold that the same principles should apply in deciding whether an action is a tort or contract for purposes of deciding whether the restrictions of the Tort Claims Act should apply.

In the case before us, the third cause of action is based upon the same set of circumstances as the second cause of action. We find that the substance of the cause of action is a claim for damages based on personal injuries resulting from defendants' failure to perform certain statutory duties toward plaintiff. Plaintiff's attempt to recast this cause of action in contract language by claiming that defendants had breached a duty to him as third party beneficiary of an alleged adoption contract should not allow him to remove his case from the constraints of the Tort Claims Act. As with the alleged agreements in other malpractice cases, the relinquishment of parental rights by plaintiff's parents created the relationship between plaintiff and defendants which gave rise to a duty of due care as defined by the various statutes governing CSD's actions.

## II

The Tort Claims Act contains a two-year time limitation on the commencement of actions, as well as a notice requirement. As of the date plaintiff filed suit, ORS 30.275 provided, in relevant part:

"(1) Every person who claims damages from a public body or from an officer, employe or agent of a public body acting within the scope of his employment or duties for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, the name of the claimant and his representative or attorney, if any, and the amount of compensation or other relief demanded. Claims against the State of Oregon or a state officer, employe or agent shall be presented to the Attorney General. Claims against any local public body or an officer, employe or agent thereof shall be presented to a person upon whom process could be served upon the public body in accordance with subsection (3) of ORS 15.080. Notice of claim shall be served upon the Attorney General or local public body's representative for service of process either personally or by certified mail, return receipt requested.

"* * * * *

"(3) *No action shall be maintained unless such notice has been given and unless the action is commenced within two years after the date of such accident or occurrence.* The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity." (Emphasis supplied.)

Defendants concede that plaintiff's second and third causes of action — which we treat as one for purposes of our analysis — were timely under the above notice and commencement of action requirements. We need, therefore, consider the timeliness of only plaintiff's first and fourth causes of action.

Plaintiff's first cause of action is based upon alleged acts and omissions of defendants from March, 1969 until August, 1973 while plaintiff was in the foster home where he was allegedly abused. Plaintiff's

fourth cause of action is based upon an alleged failure by defendants to follow up on a complaint about mistreatment of plaintiff in 1972.

Plaintiff does not deny that these incidents occurred more than two years before suit was filed in October, 1978, but argues that the two-year period did not begin to run until plaintiff discovered his injuries in 1977, *i.e.,* until plaintiff learned of CSD's responsibility for the injuries or, in the alternative, that the statute was tolled by plaintiff's minority.

In making these arguments plaintiff relies on ORS 12.110(4)[7] which, in the case of certain professional malpractice actions, provide a two-year statute of limitations based on discovery date of the claimed injuries, and a five-year tolling of the statute during minority; neither of which provisions extends the date for filing more than five years from the act or omission upon which the action is based unless commencement has been delayed because of fraud, deceit or misleading behavior.

We need not decide whether plaintiff's action is timely under these statutes, because they are not applicable to this case. In *Housen v. Morse Bros.,* 32 Or App 491, 574 P2d 361 *rev den* (1978), suit was brought against a public body for wrongful death under the Tort Claims Act and plaintiff wished to apply the three-year statute of limitations for wrongful death

---

[7] ORS 12.110(4) provides:

"(4) An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

found at ORS 30.020(1). We held that the two-year limitation on commencement of actions found at 30.275(3) was instead applicable, stating

"The Tort Claims Act is complete in itself. It creates a right where none previously existed and sets forth the conditions under which that right may be exercised. ORS 30.275 is unambiguous. It provides that no action shall be maintained under the Tort Claims Act unless it is commenced within two years after the occurrence giving rise to the right." 32 Or App at 493.

Similarly, in this case, plaintiff may not circumvent the prerequisites of the Tort Claims Act by attempting to apply a statute of limitations found elsewhere in the statutory scheme.

The Supreme Court has recently decided, however, that the discovery doctrine is applicable to the Tort Claims Act itself. In *Dowers Farms Inc. v. Lake County,* 288 Or 669, 607 P2d 1361 (1980), the court found the words "act or occurrence" in ORS 30.275(3) to be ambiguous and held that the statute of limitations does not begin to run until injury occurs and plaintiff has a reasonable opportunity for discovery of the cause of the injury.

In the case before us, plaintiff does not argue that he was unaware of his injuries at the time they were inflicted upon him or that he did not connect them with the mistreatment in his foster home. He argues only that he did not know until 1977 that CSD had legal responsibilities toward him.

We note, without deciding whether the discovery doctrine as applied by *Dowers Farms Inc. v. Lake County, supra,* is applicable to such a situation, that plaintiff's complaint belies his protestations of ignorance. The chronological statement, which is incorporated by reference into each of the causes of action, includes the statement that CSD "failed to remove plaintiff from said foster home despite plaintiff's own requests to be placed in a pre-adoptive home" and the

further statement that, in December of 1977, defendants refused plaintiff's request to review their records pertaining to him. The first cause of action includes the allegation that "CSD ignored plaintiff's efforts to inform them of the abuse, mistreatment, and neglect he was subjected to in the Barnes home," and the second cause of action repeats the allegation that plaintiff had requested to be placed in a pre-adoptive home. *See* nn 1 and 2, *supra.*

These allegations indicate that plaintiff was aware of his relationship with CSD during and after the time of the alleged abuse at the hands of his foster parents. We, therefore, hold that, assuming the discovery doctrine were to apply, plaintiff's argument that he did not discover defendants' responsibilities toward him until 1977 is unsupported by the complaint and would not prevent the barring of his action under the two-year filing limitation of the Tort Claims Act.

Because the Tort Claims Act is complete in itself, *Housen v. Morse Bros., supra,* the provision found at ORS 12.160[8] for tolling during minority has no application here; ORS 30.275(3) sets forth a clear two-year limitation on commencement of suit without making provision for tolling during minority. The term "two-years" is unambiguous; plaintiff has failed to meet this statutory requirement. Besides: ORS 12.160 is limited by its terms to ORS 12.010 - 12.050 and 12.070 to 12.260.

---

[8] ORS 12.160 provides in relevant part:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050 or 12.070 to 12.260 is:

"(1)  Within the age of 18 years,

"* * * * *

"(3)  * * * the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

As to these same two causes of action, plaintiff has also clearly failed to meet the 180-day plus 90-day notice requirements for minors found at ORS 30.275(1) and (3). Plaintiff argues, however, that the notice requirement should be construed as inapplicable or unconstitutional on the facts of this case because of the conflict of interest between defendants' fiduciary responsibility to safeguard plaintiff's rights and their interest in avoiding an adjudication of their own liability. Because we have found that plaintiff is barred under the two-year limitation for initiation of suit,[9] we do not reach these arguments.[10]

Plaintiff further contends that the notice requirement and, by logical extension, the statute of limitations requirement do not apply to the individual defendants as to the first and last causes of action because these accrued before 1977 when there was no requirement that individuals receive notice. In support of this proposition, plaintiff cites *Thornton v. Hamlin,* 41 Or App 363, 597 P2d 1307 *rev den* (1979).

In that case an individual sued an individual employe of the state and gave notice to the attorney general. The employe claimed that the notice was improper because the claim against him was not in the notice. Plaintiff's cause of action accrued in 1976 and we cited ORS 30.275 as it existed then and which began as follows:

_____

[9] *Plaintiff raises no constitutional objections to the two-year time limitation; his constitutional arguments all go to the 180-day plus 90-day notice provisions.*

[10] Plaintiff also argues that defendants should be estopped from asserting ORS 30.275(3) as a defense because plaintiff has pleaded allegations of fraud, deceit and concealment. Plaintiff does, indeed, allege in his complaint that defendants attempted to dissuade him from bringing suit and denied him access to certain records. However, the cases he cites in support of his estoppel argument are founded on ORS 12.110, which is not applicable to this case. As we have previously stated, ORS 30.275(3) is complete and unambiguous. This statute makes no allowance for deceit and it is for the legislature to decide how far it wishes to lift the barrier to suit in the tort claims area.

"(1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice * * *."

Missing was the current language referring to suits against an officer, agent or employe of a public body.

We noted that the purpose of notice

"* * * is to give the public body the opportunity to investigate the alleged tort promptly and thoroughly. * * * The benefit of this notice is thus intended to inure to the state, not to its officers, employes or agents." 31 Or App at 368.

We concluded that defendant was not entitled to notice under former ORS 30.275.

Plaintiff would have us separate out the individual defendants and hold that, because the causes of action accrued prior to 1977, there was no notice requirement as to them. This is not the holding of *Thornton.* That case merely held that the individual defendant was not entitled to notice over and above that given to the state. In this case, no notice was given to anyone. The Tort Claims Act, as it was written in 1977 and as it is written today, holds the state responsible for its torts and those of its agents.[11] Therefore, defendants fall within the scope of the act as of either date.[12]

[11] Former ORS 30.265(1) stated in relevant part:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. * * *."

Current ORS 30.265(1) provides in relevant part:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. * * *."

[12] According to *Thornton v. Hamlin, supra,* the individual defendants would not be *immune* under the act prior to 1977, because the section of the statute which grants immunity in certain instances — ORS 30.265(3) — did

Since the Tort Claims Act ultimately holds the state responsible for the torts of its employes, it is meaningless to say that plaintiff's claim against the state fails due to lack of notice, but the claim against the individuals stands. The claim against the individuals is a claim against the state and the state was entitled to notice. We do not alter our holding in *Thornton* where we said that, prior to 1977, notice to an individual defendant was not required. However, without notice to the state, the claims against the individuals must be barred. This is the same conclusion reached by this court in the recent case of *Smith v. Pernoll,* 45 Or App 395, 608 P2d 590 (1980). This was a suit against named individuals under the pre-1977 statute which did not join the state as a defendant. We held that notice to the state was, nonetheless, required.

### III

Having decided that plaintiff's first and fourth causes of action are barred by the two-year time limitation for initiation of suit, we have still to decide whether plaintiff's remaining cause of action, *i.e.,* his second and third causes of action as combined — which alleges a continuing failure to take reasonable actions by defendants to find plaintiff an adoptive home — is barred by the doctrine of discretionary immunity.

Defendants claim immunity under ORS 30.265(3), which provides in relevant part:

"(3)   Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c)   Any claim based upon the performance of *or* the failure to exercise or perform a discretionary

---

not provide this immunity to individual defendants until that date. *See Thornton v. Hamlin, supra,* 41 Or App at 365-66. However, this does not affect the fact that defendants fell within the scope of the lifting of immunity provided by ORS 30.265(1). *See* n 11.

function or duty, whether or not the discretion is abused."

Plaintiff has set forth a variety of omissions by defendants as part of his second cause of action (*see* n 2, *supra*) and argues in his brief that "even accepting that *how* to perform these obligations involves discretion suggesting immunity, discretionary immunity is unavailable to defendants where, as here, plaintiff alleges they failed to perform these statutory and regulatory obligations in any manner whatever."

This argument is erroneous. ORS 30.265(3) as quoted above grants immunity even where a defendant has failed to perform a duty or function, as long as the duty or function is discretionary. The question, therefore, is whether the functions which plaintiff alleges defendants have not performed are discretionary. If they are, defendants are immune regardless of any failure to act.

We find that the adoption functions performed by defendants involve the kind of policy decisions which should not be reviewed by the judicial branch and are, therefore, discretionary. *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 582 P2d 443 (1978). *See also, Jarrett v. Wills,* 235 Or 51, 383 P2d 995 (1963); *Christensen v. Epley,* 36 Or App 535, 585 P2d 416 (1978), *affirmed in part; reversed in part; and remanded* 287 Or 539, 601 P2d 1216 (1979), and *Pickett v. Washington County,* 31 Or App 1263, 572 P2d 1970 (1977).

Affirmed.