Argued and submitted October 31, 1980, affirmed March 30, 1981

# GUYOT,
*Appellant,*

*v.*

# MULTNOMAH COUNTY et al,
*Respondents.*

## (No. A 7712-18554, CA 17531)

625 P2d 1344

Nick Albrecht, Portland, argued the cause and filed the brief for appellant.

James G. Driscoll, Portland, argued the cause for respondents Multnomah County and Paul E. Nizdil. With

him on the brief was Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Theodore S. Bloom, Portland, waived appearance for respondent James A. Callas.

S. Ward Greene, Portland, argued the cause for respondents Lompoc Land Company, Inc., R. L. Witham and Betty Witham. With him on the brief was McMenamin, Joseph, Herrell & Babener, Portland.

Thomas E. Cooney, Portland, argued the cause for respondent Donald H. Greene. With him on the brief was Cooney & Van Hoomissen, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal by plaintiff from summary judgments for the defendants in this action for abuse of process, conspiracy to defraud, and breach of fiduciary duty. We affirm.

In February, 1973, the defendant Callas, then public guardian of defendant Multnomah County, was appointed by the probate department of the circuit court as temporary guardian of plaintiff's estate. (We will use the term "conservator" of the estate, in keeping with current statutory usage.) In June of that year, Callas petitioned to make the appointment permanent, and the petition was allowed by the court's order of October 22, 1973. The defendant Nizdil succeeded Callas as public guardian in January, 1974, and thereby succeeded Callas as conservator of plaintiff's estate.

On July 2, 1973, the defendant Greene, as personal representative of the estate of plaintiff's mother, entered into a contract to sell certain property of that estate to defendant Lompoc Land Company, Inc. (Lompoc) at a vastly undervalued price. *See In Re Greene,* 276 Or 1117, 557 P2d 644 (1976), 277 Or 89, (1977). The record before us *indicates* that the defendants R. L. Witham, Betty Witham and Callas were shareholders of Lompoc.

In April, 1974, Nizdil, as the conservator for plaintiff, the heir of his mother's estate, brought an action against Greene for the damages resulting from that sale. The action was settled after agreement was reached that the property was to be repurchased by plaintiff's mother's estate. The action was dismissed on June 23, 1975, and the terms and implementation of the settlement were approved by the probate court the following month. On October 23, 1975, with approval of the probate court, the conservator executed what purported to be a release of all claims arising out of the property sale.

Nizdil's final accounting as conservator was approved, over plaintiff's objections, on August 22, 1977, and the conservatorship was terminated.

Plaintiff presented a notice of claim to the county in November, 1977, and brought the present action in

December, 1977. His first cause of action alleges abuse of process against the county, Nizdil and Callas *as public guardian* because Callas "knowingly and unlawfully caused plaintiff to be placed under a guardianship without having or showing proper cause to do so," and Nizdil, upon succeeding Callas as public guardian, knowingly and unlawfully continued the guardianship.

The second cause of action alleges that Greene, Lompoc, the Withams and Callas *in his individual capacity*[1] "conspired * * * to defraud plaintiff of his property rights pursuant to inheritance due him by virtue of the death of his mother." Paragraph three of the second cause of action alleges

> "Defendants caused DONALD H. GREENE to be appointed as the executor of the estate of plaintiff's deceased mother and further caused, by conspiracy among themselves, the principal asset of said estate, one apartment house, to be sold at a fraudulently low price to defendant LOMPOC LAND COMPANY, INC., which company was principally owned by defendants WITHAM and CALLAS.

The third cause of action is that Nizdil, as public guardian, and the county vicariously, breached their fiduciary duty to plaintiff by compromising and settling "plaintiff's claim against the other named defendants * * * totally without the authority of plaintiff and without consulting plaintiff or attempting to explain to plaintiff the ramifications of settlement * * *." The specific facts plaintiff contends gave rise to Nizdil's breach of duty were that Nizdil, as conservator, brought the action against Greene for the wrongful disposition of the asset of plaintiff's mother's estate, and that Nizdil, as part of the settlement of that action, executed the release mentioned above.

Plaintiff's first and third causes of action allege tortious conduct by Multnomah County and by employes of that public body acting in their capacity as such. *See* ORS 30.260, 30.265. Accordingly, the causes of action arise

---

[1] The second cause of action also realleges the allegations in the first pertaining to the wrongful establishment and continuance of the conservatorship by Callas and Nizdil, respectively. However, it seems clear in context that plaintiff is not contending that Callas was acting in his official capacity in connection with the conspiracy. The operative allegation in the second cause of action has nothing to do with conservatorship affairs, but relates to activities involving the estate of plaintiff's mother and the disposition of an asset of that estate.

under the Tort Claims Act (ORS 30.260, *et seq.).* ORS 30.275(1) and (3) now provide, as relevant:

> "(1)   Every person who claims damages from a public body or from an officer, employe or agent of a public body acting within the scope of employment or duties for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, the name of the claimant and of the representative or attorney, if any, of the claimant and the amount of compensation or other relief demanded. * * *
>
> "* * * * *.
>
> "(3)   No action shall be maintained unless such notice has been given and unless the action is commenced within two years after the date of such accident or occurrence. The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity."[2]

Plaintiff's first and third causes of action are based upon events which occurred more than two years before his action was filed and more than 270 days before his notice of claim was presented. The conservatorship, upon which the first cause of action is based, was established in 1973. The events upon which the third cause of action is based were complete, at the latest, by October, 1975, when Nizdil executed the release.

■         Plaintiff contends that the abuse of process alleged in his first cause of action was a continuing tort, and that the cause of action therefore did not accrue until the conservatorship was terminated. We disagree. The Supreme Court stated in *Lane v. Ball,* 83 Or 404, 425, 160 P 144 (1916), 163 P 975 (1917):

> "The distinction between an action for false imprisonment and one for the malicious abuse of process in respect to the statute of limitations is that as to the former the time so prescribed does not begin to run until the prior action, pursuant to which the process was issued, has finally terminated in plaintiff's favor, while as to the

---

[2] Since plaintiff's causes of action accrued, and his notice of claim was presented, ORS 30.275 has been amended in various respects not material here.

latter the cause of action arises when the plaintiff is apprehended under a valid writ for some collateral purpose."

■     We conclude that the first and third causes of action are barred by the notice and limitation provisions of ORS 30.275.

■     Plaintiff's second cause of action is not subject to the Tort Claims Act. It alleges a conspiracy to defraud by private individuals and a corporation, and is based upon the sale which was consummated in July, 1973. The applicable statute of limitations is ORS 12.110(1), providing:

"An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

The relevant events occurred and were known to plaintiff more than two years before he brought this action. He argues, however, that the statute of limitations was tolled for purposes of his second cause of action during the period of the conservatorship, because, according to him, he was under disability during that period.[3] He relies on ORS 12.160, which provides:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.260, 109.100 or 109.125 is:

"(1)   Within the age of 18 years,

"(2)   Insane, or

"(3)   Imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than his natural life, the time of such disability shall not be a part of the time limited for the commencement of the action;

---

[3] Plaintiff argues that the Tort Claims Act limitation and notice provisions were also tolled by his disability. However, ORS 30.275(3) contains its own "tolling" provision, which is that the period for presenting a notice of claim can be delayed for a period "not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity." Moreover, we have previously held that ORS 12.160 does not toll the statute of limitations under the Tort Claims Act for disability due to minority. *Bradford v. Davis,* 46 Or App 213, 224, 611 P2d 326, *rev allowed* 289 Or 741 (1980). The same reasoning which led to our conclusion in *Bradford* applies to the other causes of disability enumerated in ORS 12.160.

but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

Presumably the form of disability under ORS 12.160 which plaintiff contends relates to him is "insanity" within the meaning of ORS 12.160(2). Nothing in the record suggests that plaintiff was literally or legally insane; the conservatorship applied only to his estate and not to his person. Accordingly, plaintiff cannot prevail on his disability theory unless we conclude that a person whose estate is under conservatorship automatically comes within the definition of "insane" *for purposes of ORS 12.160.*

We find one previous Oregon case, which the parties do not cite, in which the same basic issue was considered. However, the issue was not there decided. In *Richards v. Page Investment Co.,* 112 Or 507, 531, 228 P 937 (1924), the court stated:

"The testimony does not show that Andrus was insane. On the contrary, his daughter, the only witness speaking on that subject, says on cross-examination that he was not insane. The reply says he was 'adjudged mentally incompetent' in 1888 and placed under guardianship; but it was admitted by the plaintiff at the trial that the guardian was discharged January 20, 1898. This would seem to remove whatever disability may have existed and restore the operation of the statute, even if it had been interrupted.

The purpose of ORS 12.160 is to safeguard the right of redress of persons who are temporarily unable to pursue judicial remedies within the usual limitation periods. The conservator's authority to litigate and settle claims on behalf of the protected person (ORS 126.313(19), (24) and (25)) presumably reflects a legislative purpose to enable those aspects of the ward's affairs to continue while he is not able to attend to them on his own behalf.[4] Therefore, the very existence of the conservator's litigative authority militates against the tolling of limitation periods

---

[4] While we do not hold that persons under conservatorship have *no* independent access to the courts, *but see* ORS 126.223, the power to control the protected person's assets and litigation involving those assets largely devolves on the conservator.

while the conservatorship is in existence. We conclude that the existence of a guardianship or conservatorship of an estate does not, in itself, toll the statute of limitations applicable to causes of action of the protected person.

Affirmed.