In re Barbara ROTHENBERG, Debtor.

Barbara ROTHENBERG, Plaintiff,

v.

RALPH D. KAISER COMPANY,
Defendant.

Bankruptcy No. 88–00754.
Adv. No. 89–0078.

United States Bankruptcy Court,
District of Columbia.

Aug. 24, 1994.

---

Stephen C. Glassman, Thomas B. Shull, Bonner & O'Connell, Washington, DC, for debtor/plaintiff.

Emil Hirsch, Freeman, Levy, Kroll & Simonds, Washington, DC, for defendant.

*DECISION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND COMPLAINT AND MOTION FOR SUMMARY JUDGMENT*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration are two motions for partial summary judgment filed by the Defendant, Ralph D. Kaiser Company ("RDK"), and the motion to amend complaint and motion for summary judgment filed by the Debtor/Plaintiff, Barbara Rothenberg ("Rothenberg"). For the reasons that follow, the court finds that Rothenberg's claim for abuse of process is barred by the statute of limitations and, therefore, her motion to amend the complaint to assert this claim is denied. Rothenberg's unamended cause of action in Count III is barred by the statute of limitations and, therefore, summary judgment in favor of RDK as to Count III will be granted.

The court also concludes that the Covenant at issue was filed by RDK in violation of the automatic stay and is therefore void unless annulment of the stay is warranted. However, the court reserves ruling on the issue of whether the stay should be annulled retroactively, thus validating the Covenant, until RDK files a proper motion. Accordingly, the court will reserve ruling on RDK's motion for summary judgment with respect to Count IV.

Summary judgment in favor of RDK is appropriate as to Count I of Rothenberg's complaint because there is no showing of fraud in the inducement or breach of fiduciary duty by the trustee under the deed of trust. The court also finds that RDK has a valid claim against the debtor. Even if the

Covenant is determined to be void, the foreclosure sale was valid, thus creating a valid deficiency claim. However, the proper amount of RDK's claim depends upon whether RDK is secured or unsecured, an issue that cannot be decided at this juncture: RDK has not had an opportunity to move for annulment of the stay and the parties have not addressed whether the Covenant sufficed to create a lien. Accordingly, the court will award partial summary judgment on the counterclaim in favor of RDK as to the existence of a claim, deny Rothenberg's crossmotion for summary judgment, and reserve for trial the issue of the amount of RDK's claim after the court determines whether RDK is secured or unsecured.

## FACTS

Based upon a review of the Statements of Material Facts Not in Dispute filed by the parties, the court finds the following facts undisputed. RDK is a lending institution which maintains its principal place of business in Washington, D.C. Rothenberg is an individual who was the president and sole shareholder of Barbara Rothenberg, Inc. ("BRI"), a District of Columbia corporation involved in real estate transactions. BRI was the general partner of Vermont Properties, a District of Columbia general partnership.

In early 1982, Rothenberg applied for a loan from RDK on behalf of Vermont Properties. On April 6, 1982, Rothenberg signed a "Borrowers Statement" agreeing to enter into a loan transaction with RDK to be evidenced by a deed of trust and promissory notes in the principal amount of $231,000.00. On the same day, Vermont Properties, by Rothenberg individually and as President of BRI, signed forty promissory notes payable to RDK at an interest rate of 19% for a total sum of $231,000.00. The notes were personally guaranteed by Rothenberg. To secure payment of the indebtedness, Vermont Properties, by Rothenberg individually and as President of BRI, executed a deed of trust for property located at 1326 Vermont Avenue, Washington, D.C. (the "Vermont property") in favor of RDK. Sidney Heyman and Marian Gemza were named as trustees on the deed of trust and on each of the notes secured by that deed of trust.

In 1983, Rothenberg, Vermont Properties and BRI defaulted on the payment of the notes. On November 14, 1983, RDK notified Vermont Properties that a foreclosure sale of the Vermont Property would be held on or after December 28, 1983. On January 31, 1984, after proper notice, the property was sold at a public auction by Thomas J. Owen & Son, Inc. Persons attending the sale included Rothenberg, Ralph D. Kaiser, President of RDK, and Marian Gemza, one of the trustees on the deed of trust. Sidney Heyman, the other trustee, was not present at the sale.

At the time of the sale, the balance due under the promissory notes was $263,078.48. RDK purchased the property for a sum of $221,000.00. After the sale, RDK informed Rothenberg that a deficiency in the amount of $79,078.20, plus accruing interest, attorney fees and costs, remained due and owing on the notes. On March 14, 1984, RDK filed an involuntary petition for bankruptcy against Rothenberg. On July 23, 1984, a Motion for Continuance was filed with the bankruptcy court advising the court that "Counsel for Ralph D. Kaiser Company, Inc. and Barbara Rothenberg are in the process of effectuating a settlement." On August 16, 1984, Rothenberg executed a Covenant Not to Encumber or Convey Real Estate (the "Covenant") which concerned property owned by Rothenberg at 1325 Rhode Island Avenue, N.W., Washington, D.C. (the "Rhode Island property"). The Covenant was filed with the Recorder of Deeds on August 29, 1984.

On August 28, 1984, a motion to dismiss the involuntary petition was filed by RDK. Rothenberg and her attorney signed the motion as consenting thereto. The motion states that counsel for the parties, as well as the debtor, believed that RDK's claim was better resolved in the Superior Court of the District of Columbia, and that there was no prejudice to third parties by the dismissal of the involuntary petition. On October 9, 1984, RDK filed a complaint against Rothenberg in the Superior Court for the District of Columbia seeking a deficiency judgment. The involuntary bankruptcy petition was not dis-

missed, however, until February 23, 1987. The Order dismissing the case states that an objecting creditor withdrew his objection to dismissal based on RDK's representation that it received *no payment or consideration for consenting to dismissal of the involuntary petition.*

On September 13, 1988, Rothenberg filed a petition seeking reorganization under Chapter 11 of the Bankruptcy Code. RDK filed an Amended Proof of Claim, alleging an indebtedness owed to it based on the deficiency judgment on foreclosure sale in the amount of $79,078.20 plus 19% interest, attorney fees and costs.[1] In the amended proof of claim, RDK asserts that its claim is secured by the "security interest created by the Covenant Not to Encumber or Convey Real Estate dated 8/16/84 . . . ."

Rothenberg commenced this adversary proceeding on August 4, 1989, seeking damages for two counts of fraud, an accounting of all monies paid and owed on the notes as a result of the foreclosure sale[2], a declaration that RDK's lien is invalid, and disallowance of RDK's claim. On November 8, 1989, RDK filed a counterclaim seeking the entry of · judgment against Rothenberg in the amount of $193,693.67 (which amount consists of $76,078.20 for principal balance, plus $66,729.08 for pre-petition interest, $12,719.85 for post-petition interest, $32,272.75 for pre-petition attorney fees and $5,944.19 for post-petition attorney fees) plus continuing accrued interest and other costs.

RDK also filed a Motion for Partial Summary Judgment on its Counterclaim and Count I of Rothenberg's Complaint. In Count I, Rothenberg asserts a fraud claim against RDK on the grounds that RDK conspired with F. Bruce Corneal to defraud Rothenberg of thousands of dollars. Rothenberg also alleges that the foreclosure sale was not properly conducted on the grounds that the property was bid in by RDK for a grossly inadequate price; that the one trustee under the deed of trust who was present at the sale was so related to RDK as to be disqualified; and that the terms of the sale were such and the sale itself was so conducted as to chill any bidding.

On December 4, 1989, RDK filed a second motion for partial summary judgment as to Counts III and IV of Rothenberg's Complaint. Count III contains Rothenberg's second claim for fraud which is based on the grounds that RDK acted illegally, willfully, wantonly, and fraudulently in obtaining the Covenant Not to Encumber or Convey Real Estate from Rothenberg for the Rhode Island property. Rothenberg claims that RDK obtained the Covenant in violation of the automatic stay because at the time she signed the Covenant, the involuntary petition filed against her by RDK was still pending. In Count IV, Rothenberg asserts that RDK's secured claim in her bankruptcy proceeding is invalid.

On February 1, 1990, Rothenberg filed a motion to amend Count III of her Complaint. Rothenberg states that upon further investigation and review, Count III can be more appropriately characterized as a claim against RDK for a series of acts that constitute abuse of process through the Bankruptcy Code rather than a claim of fraud. Rothenberg also seeks to make minor changes to Counts IV and V, to clarify that the reason the lien against the Rhode Island property is invalid is because the Covenant was filed in violation of the automatic stay and is void under District of Columbia law; to seek the same measure of damages as those sought in Count III; and to correct a typographical error regarding the statutory authority, section 502(a)(7) rather than section 502(b)(7), relied upon for the disallowance of RDK's claim.[3]

Rothenberg also filed her own motion for partial summary judgment, seeking judg-

---

1. RDK originally filed a proof of claim on February 23, 1989, alleging an unsecured claim arising out of the deficiency judgment on foreclosure sale in the amount of $79,078.20. The Amended Proof of Claim, described above, was filed April 4, 1989.

2. The parties agree that Count II for an accounting has been disposed of without the necessity for Court intervention.

3. There is no section 502(a)(7) in the Code. However, given the nature of the plaintiff's arguments, the court assumes plaintiff intended to cite section 502(b)(1).

ment in her favor on RDK's counterclaim. Rothenberg seeks attorney fees and costs associated with defending the counterclaim and resisting RDK's actions in the Superior Court and in Rothenberg's prior Chapter 7 proceeding.

## DISCUSSION

### I. *Rothenberg's Motion to Amend the Complaint*

RDK claims that Rothenberg seeks to fundamentally alter the nature of her claim under Count III from a charge of fraud regarding the creation of the Covenant to a broader claim that the filing of the involuntary petition constituted an abuse of process. RDK opposes Rothenberg's motion on the grounds that 1) the abuse of process claim is barred by the statute of limitations; 2) the amendment is improper under the standards governing Fed.R.Civ.P. 15(a); and 3) the abuse of process claim is preempted by the statutory remedies provided under 11 U.S.C. § 303(i).

Under Fed.R.Civ.P. 15(a), made applicable herein by Fed.R.Bankr.P. 7015, a party may amend his pleadings "only by leave of court" and that leave "shall be freely given when justice so requires." The following reasons have been recognized as justifying denial of a motion to amend—"undue delay, bad faith or dilatory motive * * *, repeated failure to cure deficiencies * * *, undue prejudice to the opposing party * * *, futility of the amendment." *Yellow Bus Lines, Inc. v. Drivers, Chauffers & Helpers Local Union 639,* 883 F.2d 132, 145 (D.C.Cir.1989) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Accordingly, if Rothenberg's claim of abuse of process is barred by the statute of limitations, or preempted by the statutory remedies provided by section 303(i), it would be futile to allow Rothenberg to amend her complaint to assert this cause of action, and the motion to amend the complaint as to Count III should be denied.

■ As to the statute of limitations argument, both parties agree that the statute of limitations begins to accrue with the last act which constitutes the tort. However, Roth-

enberg argues that the continuing tort doctrine applies in this case because RDK continues to benefit from obtaining the Covenant on the Rhode Island property by asserting a secured claim in her Chapter 11 proceeding. Rothenberg also argues that the statute of limitations was tolled by section 108(a) from March 14, 1984, when RDK filed the involuntary petition against her, until February 23, 1987, when the involuntary case was dismissed.

■ Under District of Columbia law, the tort of abuse of process occurs when there is a "perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Neumann v. Vidal,* 710 F.2d 856, 860 (D.C.Cir.1983) (quoting *Hall v. Field Enterprises, Inc.,* 94 A.2d 479, 481 (D.C.Mun.App. 1953)); *Whelan v. Abell,* 953 F.2d 663, 670 (D.C.Cir.1992) (abuse of process entails "pervasion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge"). Courts have held that a cause of action for abuse of process accrues when the last act complained of was committed. *See, e.g., Strutz v. McNagny,* 558 N.E.2d 1103, 1106 (Ind.App. 3 Dist.1990) (cause of action for abuse of process for a malpractice/unjust enrichment action accrued when the act complained of, the filing of the malpractice/unjust enrichment complaint, was committed); *Withall v. Capitol Federal Savings of America,* 155 Ill. App.3d 537, 108 Ill.Dec. 202, 206, 508 N.E.2d 363, 367 (1 Dist.1987) (statute of limitations for abuse of process action commences to run from the date that the last act giving rise to the cause of action has occurred); *Commercial Equity Corp. v. Majestic Sav. and Loan Ass'n,* 620 P.2d 56, 57 (Colo.App.1980) (where all of the allegations in the complaint filed June 4, 1979, referred to specific conduct by defendants which occurred prior to June 1, 1973, plaintiff's action for abuse of process accrued as of June 1, 1973, and thus was barred by the applicable six year statute of limitations).

In *Guyot v. Multnomah County*, 51 Or. App. 373, 625 P.2d 1344, 1345 (1981), the court rejected the plaintiff's argument that his cause of action for abuse of process was a continuing tort. In *Guyot*, the plaintiff brought an action for abuse of process against the county for improperly placing him under conservatorship. The plaintiff argued that his abuse of process claim was not barred by the statute of limitations because his claim was a continuing tort, and, therefore, did not accrue until the conservatorship was terminated. The Oregon court rejected this argument, implicitly holding that the plaintiff's cause of action arose when the conservatorship was established, not when it was terminated. *Guyot v. Multnomah County*, 625 P.2d at 1345–46.

Similarly, in this case, any cause of action for abuse of process arose when RDK performed the last act to compel Rothenberg to do something which Rothenberg could not legally and regularly be compelled to do, that being the signing of the Covenant. Thus, the court concludes that any cause of action by Rothenberg against RDK for abuse of process arose when RDK obtained the Covenant and filed it with the Recorder of Deeds on August 29, 1984.

The cases relied upon by Rothenberg to support her argument that the continuing tort doctrine applies in this case are distinguishable. For example, in *Rochon v. F.B.I.*, 691 F.Supp. 1548, 1564 (D.D.C.1988), the plaintiff alleged that FBI field agents and supervisors for more than three years committed or condoned frequent acts of racial harassment against him. The court rejected certain defendants' argument that the plaintiff's claims for any alleged actions taken before November 5, 1984, were barred by the statute of limitations. The court noted that under the continuing tort doctrine, it is proper to regard the cumulative effect of conduct as actionable where no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of

significant harm, and that the cause of action based on such conduct accrues at the time the tortious conduct ceases. *Rochon v. F.B.I.*, 691 F.Supp. at 1563. The court further noted that the continuing tort doctrine applies even to a series of acts that are not inherently of a repetitive character and even when a plaintiff was sufficiently aware of the harm caused to file an administrative complaint challenging the defendant's conduct.

In *Rochon*, the court found that the continuing tort theory applied because the common law torts alleged by the plaintiff flowed not from the defendants' individual actions, but from the cumulative and synergistic effect of the defendants' unlawful conduct. *Rochon v. F.B.I.*, 691 F.Supp. at 1563–64. Accordingly, the court concluded that the alleged actions of certain defendants were not separate activities but amounted to allegations of the "continuing torts" of intentional infliction of emotional distress, invasion of privacy, and, conceivably, negligence. Because the conduct continued into early 1986, the court found that the claims fell within the three-year statute of limitations.

In this case, Rothenberg does not allege a series of acts by RDK which would constitute a claim for abuse of process. Rather, Rothenberg alleges two distinct incidents which can be identified as the cause of the harm for which she is seeking recovery. Those incidents are the filing of the involuntary petition against her and the obtaining and filing of the Covenant. All of the damages sought by Rothenberg in Count III of her amended complaint stem from these two actions. Thus, the court concludes that this is not an appropriate case for applying the continuing tort doctrine.

■ The court also rejects Rothenberg's argument that the statute of limitations was tolled pursuant to section 108(a) while the automatic stay was in effect during the pendency of the involuntary petition filed against her.[4] Under District of Columbia law, the

---

4. Section 108(a) provides as follows:

 (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the

filing of the petition, a trustee may commence such action only before the later of—

 (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

 (2) two years after the order for relief.

time period for filing an abuse of process action is three years. *See* D.C.Code Section 12–301(8).[5] Therefore, unless tolled, the statute of limitations for Rothenberg's abuse of process action would have expired on August 29, 1987, three years from the date of the last act constituting the tort, the filing of the Covenant.

In support of her argument that the statute of limitations was tolled under section 108(a) from the date the involuntary petition was filed against her on March 14, 1984, until the case was ultimately dismissed on February 23, 1987, Rothenberg cites *Wood & Locker, Inc. v. Doran and Assoc.,* 708 F.Supp. 684, 686–87 (W.D.Pa.1989); *In re Flying S Land & Cattle Co.,* 71 B.R. 183 (Bankr. D.Nev.1987); and *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1459–60 (5th Cir.1987). In each of these cases, the court held that the debtor in possession was entitled to the rights and powers bestowed upon a trustee in section 108 by virtue of section 1107(a). Because the applicable statute of limitations had not expired prior to the filing of the *voluntary* petition by the debtor, each of the courts concluded that the two-year tolling provision of section 108(a)(2) applied. *See Wood & Locker,* 708 F.Supp. at 687 (because none of the applicable statute of limitations had expired as of the voluntary petition date, the statute of limitations was extended by virtue of section 108(a) and 1107(a) for an additional two years after the petition date); *In re Flying S Land & Cattle,* 71 B.R. at 186 (the debtor's complaints, having been filed within two years of the date of the filing of the bankruptcy petition which was filed within the relevant period of limitations under state law, are not barred by the statute of limitations); *Cunningham v. Healthco,* 824 F.2d at 1459 (appellants did not dispute that the suit was filed within the tolling period under section 108(a)(2)).

These cases are distinguishable, however, because each involved the filing of a voluntary petition. The filing of a voluntary petition constitutes an order for relief under section 301 and, therefore, the two-year period under section 108(a)(2) began running on the date the voluntary petition was filed. In an involuntary case, such as Rothenberg's, the filing of the petition does not constitute an order for relief. Under section 303(h), the court shall order relief against the debtor only if the involuntary petition is not timely controverted. RDK asserts, and Rothenberg does not contest, that an order for relief was never entered in the involuntary case. Accordingly, the two-year tolling period of section 108(a)(2) does not apply to suspend the running of the statute of limitations during the pendency of the involuntary case.

■ To the extent Rothenberg relies upon section 108(a)(1) and the application of the automatic stay to toll the running of the statute of limitations, her argument must also fail. Section 108(a)(1) merely adds to the applicable limitations period, if not already expired before the date of filing the petition, any period of suspension occurring on or after the commencement of the case. The only possible suspension period which may apply, although not cited by Rothenberg, is D.C.Code § 12–304. Under this provision, the statute of limitations is suspended for the period of time during which the bringing of an action is stayed by a statutory

**5.** D.C.Code § 12–301(4) provides that the statute of limitations for "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment" is one year; whereas D.C.Code § 12–301(8) provides that an action "for which a limitation is not otherwise specially prescribed" is governed by a three-year limitation. RDK argues that the one-year statute of limitations should apply to a cause of action for abuse of process because it is similar to an action for malicious prosecution. However, similar reasoning was rejected in *Saunders v. Nemati,* 580 A.2d 660, 664 (D.C.App.1990), where the appellee argued that a claim based on verbal abuse can fairly be characterized as sufficiently close to the enumerated tort of assault as to make applicable the one-year statute of limitation of D.C.Code § 12–301(4). The court held that the plain language of the statute controls, and an independent action for intentional infliction of emotional distress is governed by the general residuary three-year limitation of section 12–301(8). Likewise, an action for abuse of process is governed by the residuary three-year limitation of section 12–301(8) because the statute does not specifically provide otherwise. *See also Morfessis v. Baum,* 281 F.2d 938 (D.C.Cir.1960) (where complaint was entitled "Abuse of Process", court found that complaint really stated a cause of action for malicious prosecution and the applicable statute of limitations was one year rather than three).

provision. However, in this case the statute of limitations was not suspended under D.C.Code § 12–304 because the automatic stay in the involuntary case did not preclude Rothenberg from pursuing her claims against RDK. Accordingly, the court concludes that section 108(a) does not apply to toll the running of the three-year statute of limitations while the involuntary case was pending. As stated earlier, the limitations period expired on August 29, 1987, long before Rothenberg filed her voluntary petition under Chapter 11 on September 13, 1988.[6] Thus, Rothenberg's claim for abuse of process is barred by the statute of limitations. Accordingly, the court finds it futile to allow Rothenberg to amend her complaint to assert this cause of action and will deny her motion to amend the complaint as to Count III.[7]

## II. RDK's Motion for Summary Judgment as to Counts III & IV

### A. Count III

■ Unamended, Count III of Rothenberg's complaint asserts a cause of action for fraud, alleging that RDK fraudulently obtained the Covenant against the Rhode Island property. Rothenberg's claim of fraud is based upon the alleged failure of RDK to dismiss the involuntary petition. Rothenberg alleges that RDK agreed to dismiss the involuntary petition and was given sixty days in which to file a lawsuit against Rothenberg.

■ Under District of Columbia law, an action involving allegations of fraud must be brought within three years from the time the fraud is either discovered or reasonably should have been discovered. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1488–89 (D.C.Cir.1989); *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C.App.1987), citing, *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C.App.1978). RDK filed a lawsuit against Rothenberg on October 9, 1984, but the involuntary petition was not dis-

missed until February 23, 1987. Thus, Rothenberg's cause of action for fraud would have accrued, at the latest, on October 9, 1984, when Rothenberg knew, or should have known, that RDK filed the Covenant and its lawsuit without first obtaining a dismissal of the involuntary petition. Accordingly, the three-year statute of limitations for actions alleging fraud expired on October 9, 1987, long before Rothenberg filed her voluntary petition on September 13, 1988. Rothenberg's cause of action set forth in Count III is therefore barred by the statute of limitations and, accordingly, summary judgment in favor of the defendants on Count III is appropriate.

### B. Count IV

Count IV of the complaint, as amended, asserts that RDK's lien is invalid because it was filed in violation of the automatic stay and is void under District of Columbia law. Plaintiff seeks compensatory and punitive damages and attorneys' fees and costs.

■ RDK contends that Count IV should be dismissed as moot because Rothenberg's plan of reorganization obviates the need for the court to resolve the issue of whether RDK's claim is secured. This argument is without merit. Rothenberg's Third Amended Plan of Reorganization, filed on December 18, 1989, and confirmed by Order entered on February 21, 1990, provides for payment of RDK's claim as follows:

> The Debtor shall give to Ralph D. Kaiser Company, Inc. a third deed of trust on her residence at 12 Logan Circle in the form attached hereto and that lien shall be available for payment of whatever allowed claim, secured or unsecured, that Ralph D. Kaiser Company, Inc., is found to be owed in this case, including any interest allowed on the claim under 11 U.S.C. 506a or, if the claim is unsecured, interest after the date of the petition at the rate provided for judgments in the District of Columbia.

---

6. Having concluded that Rothenberg's claim for abuse of process is barred by the statute of limitations, the court need not address RDK's argument that the claim is preempted by the statutory remedies provided by section 303(i).

7. Focusing its arguments on the abuse of process claim, RDK does not appear to object to the "technical corrections" Rothenberg seeks to make to Counts IV and V of her Complaint. The court finds that these corrections will not unduly prejudice RDK, and should be allowed in the interests of justice.

*See* Third Amended Plan of Reorganization, Case No. 88–754, Docket Entry No. 113. Thus, even though RDK is given a replacement lien securing the payment of its claim, the issue of whether its claim is secured is not rendered moot by the plan because the amount of interest RDK is entitled to receive is dependent upon whether or not its claim is secured.

■ RDK further contends that the statute of limitations has run on Rothenberg's right to contest the Covenant because Rothenberg never contested the validity of the Covenant before the involuntary petition was dismissed. The court rejects this argument. There is no statute of limitations on actions which seek to remedy violations of the automatic stay. *In re Briglevich,* 147 B.R. 1015, 1020 (Bankr.N.D.Ga.1992); *In re R. & L. Cartage & Sons, Inc.,* 118 B.R. 646, 651 (Bankr.N.D.Ind.1990); *In re Elliott,* 81 B.R. 460, 463 (Bankr.N.D.Ill.1987). *See also In re Schwartz,* 954 F.2d 569 (9th Cir.1992) (section 549 statute of limitations did not apply to debtors' action in a subsequent bankruptcy case to set aside tax assessment as void in violation of the stay despite failure to challenge assessment in their prior case); *In re Germansen Decorating, Inc.,* 149 B.R. 517 (Bankr.N.D.Ill.1992) (section 549(d) does not place a time limit on actions to recover property transferred in violation of the automatic stay); *Briglevich,* 147 B.R. at 1019 (section 549(d) does not apply to trustee's action to challenge actions prohibited by section 362) and cases cited therein. *But see In re E–Tron Corp.,* 141 B.R. 49 (Bankr.D.N.J.1992) (section 549(d) applies to trustee's action to avoid transfer as void in violation of the stay).

As to the validity of the Covenant, RDK alleges that it was obtained as part of a settlement agreement between Rothenberg and RDK to the effect that RDK agreed to dismiss the involuntary petition in exchange for Rothenberg's agreement not to encumber, transfer or convey the Rhode Island property until RDK's claim for a deficiency judgment was adjudicated by a final nonappealable order in the D.C. Superior Court. RDK contends that the filing of the Covenant did not violate the automatic stay; and, even

if it did, the automatic stay does not render the Covenant void *ab initio,* but only void upon a proper and timely application being made to the court to invalidate the Covenant.

■ RDK's action securing the Covenant and subsequent recordation violated the automatic stay. The court rejects RDK's argument that the stay was not violated because the execution of the Covenant and its filing constituted a disposition of the Rhode Island property by Rothenberg within the broad language of section 303(f). A similar argument was made by a bank and rejected by the court in *In re Omni Graphics, Inc.,* 119 B.R. 641 (Bankr.E.D.Wis.1990). In *Omni,* the bank, the debtor corporation, and the guarantors entered into an agreement whereby possession of all of the debtor's assets, which had been pledged to the bank as security, were surrendered to the bank. Subsequently, other creditors of the debtor filed an involuntary petition against the debtor. While the bank was informed of the filing of the involuntary petition, it nevertheless proceeded with a public sale of the debtor's assets. No approval from the bankruptcy court was sought or obtained by the bank before the sale.

The court held that the bank violated the automatic stay; and, as relevant herein, concluded that section 303(f) did not apply to protect the bank. The court stated that section 303(f) is intended to enable the debtor involved in an involuntary petition to continue doing business during the so-called "gap period" before entry of an order for relief. The court found that the sale of the assets was conducted by the bank, not by the debtor, and in no way enabled the debtor to carry on its business operations. *In re Omni Graphics,* 119 B.R. at 643.

Similarly, in this case, the signing of the Covenant did not enable Rothenberg to continue doing business during the gap period before the entry of an order for relief. Rather, the Covenant was signed as consideration for the dismissal of the involuntary petition filed by RDK and enabled RDK to obtain the Covenant, which the parties treat as a lien, against property of the debtor. An act to create a lien against property of the estate is stayed pursuant to section 362(a)(4). More-

over, even if the Covenant is invalid and/or does not constitute a lien, RDK's actions were an attempt to exercise control over property of the estate, which is likewise stayed pursuant to section 362(a)(2). The court does not believe that section 303(f) applies to excuse RDK's actions which were clear violations of the automatic stay, regardless of whether the debtor consents.

■ Having found RDK's actions to be in violation of the stay, the court must address what effect that finding has on the validity of the Covenant. Rothenberg argues that the Covenant is void as a matter of law because it was filed while the involuntary petition was still pending against her. Relying upon *In re Calender,* 89 B.R. 280, 283 (D.C.1988), Rothenberg argues that the District of Columbia follows the rule that acts in violation of the automatic stay are void, not merely voidable. Further, Rothenberg argues that she is entitled to damages for RDK's willful violation of the automatic stay.

Courts are split on the issue of whether an action in violation of the automatic stay is void or voidable. *See In re Lipuma,* 167 B.R. 522, 525 (Bankr.N.D.Ill.1994) (court notes the split in the courts of appeals on the void/voidable issue, stating that the Fifth and Sixth Circuits believe that violations of the stay are voidable, whereas the First, Second, Third, Ninth, Tenth, and Eleventh Circuits believe that violations of the stay are void *ab initio* ). The general rule appears to be that any action taken in violation of the automatic stay is void and without effect. *See Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940); *Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371, 372 (10th Cir.1990); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir.1985).

Exceptions to this general rule have been created by applying equitable considerations where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the creditor's plight. *See In re Calder,* 907 F.2d 953, 956–57 (10th Cir.1990) (court held that it would be inequitable to allow the debtor any protection under section 362(a) to defeat a state court judgment entered in violation of the stay where the debtor actively litigated the state court action and did not provide notice of the pending Chapter 13 proceeding until just before the state court was to enter a final judgment); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984) (laches warranted suspension of the automatic stay provisions and barred the debtor's attempt to nullify a nearly three-year old state court judgment); *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982) (section 362 did not render creditors' actions in moving debtor's goods out of its store and into a warehouse illegal because the creditors acted in good faith in ignorance of the pending bankruptcy petition and because the bankrupt's unreasonable behavior contributed to the creditor's plight).

In *In re Siciliano,* 13 F.3d 748, 750–52 (3d Cir.1994), the court adhered to the general rule that violations of the stay are void, but noted that section 362(d) gives the court authority to annul the stay retroactively in proper circumstances and thereby validate an action that would otherwise be void *ab initio.* Several bankruptcy courts have also taken this approach. *See In re Lampkin,* 116 B.R. 450, 451 (Bankr.D.Md.1990) (creditor who took action in violation of the stay must seek to have the stay annulled; otherwise, the action is void); *Lipuma,* 167 B.R. at 526–27 (equitable principles warranted annulment of the stay so as to validate the tax sale conducted in violation of the stay); *In re Williams,* 124 B.R. 311, 316–18 (Bankr. C.D.Cal.1991) (annulment of stay was not warranted and thus foreclosure sale in violation of the stay was void).

■ This court agrees with the approach taken in *Siciliano* and holds that actions taken in violation of the automatic stay are void unless the court grants an annulment of the stay under section 362(d). While RDK argues that the stay should be annulled retroactively if the court adopts the view that the Covenant is void, no such motion has been filed with the court. Accordingly, until such motion is filed, the court will not address the issue of whether RDK is entitled to have the stay annulled under section 362(d), and will defer the consideration of any equitable arguments (including laches and equitable estoppel) made by the parties until a

hearing on the motion. The court will give RDK 10 days from the entry of this decision and accompanying order to file a proper motion for annulment and motion to reopen in the prior case. If such a motion is not timely filed, the court will at that time rule upon RDK's motion for summary judgment as to Count IV.

### III. *RDK's Motion for Summary Judgment as to Count I*

■ RDK seeks summary judgment as to Count I of Rothenberg's complaint, which alleges fraud on the grounds that the foreclosure sale of the Vermont property was improper.[8] Rothenberg argues that the nondisclosure by RDK of the intimate association of the trustees with RDK and the improperly conducted foreclosure sale void the obligation to RDK and form the basis of a recoverable action against RDK.

Relying upon *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 421 (D.C.Cir.1963), Rothenberg argues that when a close connection exists between the creditor and the trustee, the creditor must show that the plaintiff acquiesced to this relationship after full and fair disclosure of the facts concerning the relationship. Further, when such a relationship exists between the creditor and the trustee, Rothenberg argues that the creditor has the burden of showing that no violations occurred at the sale.

Rothenberg claims that the only trustee at the sale, Marian Gemza, breached her fiduciary duty to Rothenberg by allowing the foreclosure sale to go forward with only one serious bidder and by failing to consult with Rothenberg regarding the same. In fact, Rothenberg claims that Gemza told Rothen-

berg to leave the sale. As a result of Gemza's conduct, Rothenberg claims that the property was sold for a grossly inadequate price of $221,000.00.

■ Rothenberg is correct in claiming that a trustee has a fiduciary obligation to both the debtor and the creditor and is obligated to see that the terms of the deed of trust are complied with. However, Rothenberg is incorrect in asserting that the existence of a conflict of interest, without more, is sufficient to void a foreclosure sale. In *Johnson v. Inter–City Mortgage Corp.*, 366 A.2d 435 (D.C.App.1976), the appellants brought an action to set aside a foreclosure sale on the grounds that the trustees, who were officers and controlling stockholders of the lender, violated their fiduciary duties by instituting foreclosure proceedings after the appellants' defaults. Relying upon *Sheridan*, the appellants argued that trustees who are also representatives of the lender cannot participate in a foreclosure proceeding without breaching the fiduciary duties they owe to the borrower. The court rejected this argument, stating as follows:

> *Sheridan* requires a fiduciary with conflicting interests to bear the burden of proving that he has acted in a manner faithful to his trust obligations. It is true that the practice of allowing major stockholders and officers of the lender to serve as trustees under a deed of trust is "subject to suspicion and criticism." However, this is not to say that a mere showing of a conflict of interest is enough to find that the [trustees] breached their fiduciary obligations in the instant case. To find such a breach, there must also have been a showing of neglect of duty or of misconduct by them as trustees. [Citations omitted.]

---

8. Rothenberg also alleges in her complaint that RDK conspired with F. Bruce Corneal to get Rothenberg to sign the promissory notes and the deed of trust, that RDK acknowledged that Corneal would be responsible for repayment of the notes, and that because of the personal and professional relationship between the parties and Corneal, Rothenberg reasonably relied on the representations of RDK and signed the notes. In its reply brief, RDK claims that Rothenberg abandoned her claim that she was fraudulently induced into executing the promissory notes because she failed to present any evidence in support of these allegations and failed to discuss this

legal theory in her opposition. In a supplemental memorandum, Rothenberg states that she is not abandoning her fraud claim regarding the notes and deed of trust, but fails to direct the court to any evidence or legal authority in support of her allegations that she was fraudulently induced into signing the notes and the deed of trust. Thus, it appears to the court that Rothenberg has indeed abandoned her claim that she was fraudulently induced into executing the notes and the deed of trust, and concludes that summary judgment in favor of RDK is appropriate as to any claim of fraudulent inducement.

*Johnson v. Inter–City Mortgage Corp.*, 366 A.2d at 437.

Similarly, in *Perry v. Virginia Mortgage and Inv. Co.*, 412 A.2d 1194 (D.C.App.1980), the appellant filed an action to invalidate a foreclosure sale on the grounds, *inter alia*, that the sale was improper because the trustees had violated their fiduciary duties. While recognizing that a trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower, the court also stated that, as a general proposition, trustees of deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia. *Perry v. Virginia Mortgage*, 412 A.2d at 1197. The court further stated that because the trustees had conflicting interests, they had the burden of proving faithfulness to their trust.

In *Perry*, the appellant alleged that the trustees violated their "general fiduciary duties" to her by doing "nothing" on her behalf, by failing to meet or otherwise communicate with her over their tenure as trustees, and by their failure to discuss alternatives to foreclosure. The court found no basis for imposing on the trustees any "general fiduciary duties" beyond those otherwise required by law for the borrower's protection, and found that the trustees complied with the terms of the trust instrument and the District of Columbia Code. Further, in the absence of fraud, misrepresentation, self-dealing, or other overreaching by the trustees, or of related benefit to the noteholder, the court found that the trustees carried their burden of proving fidelity to their trust. *Perry v. Virginia Mortgage*, 412 A.2d at 1199.

The court also rejected the appellant's argument that the trustees' failure to disclose their affiliation with the noteholder automatically requires invalidation of the sale. The court noted that in *Sheridan* the court left open the question of whether the trustees' failure to disclose their close connection to the lender would have been excusable had they demonstrated that all their acts as trustees had been scrupulously fair and impartial. The court further noted that in *Johnson*, where the disclosure question was directly addressed, the court stated that the broad language of *Sheridan* must be read in context, emphasizing that *Sheridan* was not an action to set aside a foreclosure, nor did the record reveal a history of chronic defaults. Under the circumstances presented in *Perry*, the court did not find that the trustees' alleged failure to disclose their conflicting interests formed a sufficient basis for an actionable breach of trust, noting that there was no other neglect of duty or misconduct by the trustees and that there was a pattern of default by the debtor. *Perry v. Virginia Mortgage*, 412 A.2d at 1199.

■ In this case, it is undisputed that Gemza was an officer of RDK and had a personal relationship with Ralph D. Kaiser ("Kaiser"). Further, for purposes of its summary judgment motion, RDK does not contest Rothenberg's claims that she was never informed of the trustees' relationship to RDK, that she was asked by Gemza to leave the foreclosure sale, and that in addition to RDK, there was only one serious bidder at the sale. On the other hand, Rothenberg does not dispute RDK's contention that she defaulted numerous times under the notes, and that she was delinquent 14 months under the notes at the time of the foreclosure sale. Rothenberg does not claim that Gemza failed to comply with the terms of the trust instrument or any statutory provision. Rather, she claims that identity of interests between Gemza and Kaiser allowed RDK to purchase the property for a price well below market value and that under District of Columbia law, RDK is not allowed to make any profit on the purchase and subsequent resale of the Vermont property because of this identity of interests.

Relying upon an appraisal dated February 24, 1982, which states that the fair market value of the Vermont property was estimated to be $325,000.00, Rothenberg claims that the value of the Vermont property was in excess of $325,000 at the time of the foreclosure sale. At the foreclosure sale on January 31, 1984, RDK was the prevailing bidder at a price of $221,000. Thus, Rothenberg argues that RDK got an extraordinary discount of at

least 33 percent over the previous market value.

However, in response to an interrogatory asking her what the fair market value of the Vermont property was at the time of the foreclosure sale, Rothenberg responded that the fair market value was approximately $300,000. There is also evidence in the record that one year and eight months after the foreclosure sale, the property was sold for a purchase price of $300,000.[9] RDK claims that this price was realized after substantial renovations and improvements were made to the property and it was converted to a condominium, thereby increasing its value. Accordingly, RDK claims that it purchased the property at a price equal to 70% of the sales price realized one year and eight months later, after the value of the property had been greatly increased.

 In the absence of allegations showing misconduct on the part of the trustee affecting the fairness of the sale or showing violation of the terms of the trust, an inadequate sales price does not warrant a finding that the foreclosure sale was improper. *Jackson v. Fuller*, 85 F.2d 816, 818 (D.C.Cir.), *cert. denied*, 299 U.S. 608, 57 S.Ct. 236, 81 L.Ed. 448 (1936). The court will not set aside a foreclosure sale on the basis of inadequacy of price alone, unless the inadequacy is such as to shock the conscience and of itself suggest fraud or misconduct. *Id.; S & G Investment, Inc. v. Home Federal Sav. & Loan Ass'n*, 505 F.2d 370, 378–79 (D.C.Cir. 1974). In *Jackson*, where property was sold at a foreclosure sale for more than 50% of the asserted assessed value and more than 38% of the asserted actual value of the property, the court found that the sales price was not so inadequate as to shock the conscience and of itself suggest fraud or misconduct. *Jackson v. Fuller*, 85 F.2d at 818.

Assuming in this case that the Vermont property had a fair market value of $325,000, no reasonable factfinder could find that RDK's bid price of $221,000 at the foreclosure sale, which is 68% of the market value claimed by Rothenberg, is so low as to shock the conscience of the court. Moreover, Rothenberg does not allege that notice of the sale was improper; that circumstances, such as a snow storm or other conditions, prevented bidders from attending the sale; or that a second sale by an independent trustee would have resulted in a higher bid price. *See Orlove v. National Sav. & Trust Co.*, 98 F.2d 259 (D.C.Cir.1938) (in a suit to recover a deficiency remaining due under a deed of trust securing promissory notes after a trustee's sale of the property, the court rejected the guarantor's argument that the property was worth $17,500 and that that amount should be credited against the balance due on the notes, finding that the guarantor's evidence would not have supported a finding that the property was worth more than $17,500, or that a sale on a different date, or under different conditions in other respects would have produced a larger bid than $17,500). That the trustee may have asked Rothenberg to leave the sale is not evidence of misconduct on the part of the trustee which would have affected the fairness of the sale, particularly in light of the fact that Rothenberg did not leave and was present for the entire sale.

The cases relied upon by Rothenberg in support of her claim of fraud are distinguishable. In *Earll v. Picken*, 113 F.2d 150 (D.C.Cir.1940), the court held that there was a breach of trust where the trustee under a deed of trust concealed the fact that he loaned the money to the plaintiff through an agent or straw man and, unknown to the plaintiff, purchased at a discount a second deed of trust, thereby becoming the trustee and the noteholder under both deeds of trust. In *Holman v. Ryon*, 56 F.2d 307 (D.C.Cir. 1932), the court awarded damages against the trustee under a deed of trust and his wife based on the actual value of the plaintiff's property at the time of a foreclosure sale where the trustee failed to disclose that the payee under a promissory note was a straw mortgagee and that he was the actual lender

9. The listing agent for the Vermont property, Constance Maffin, stated in her deposition that the property was listed within nine months of the foreclosure sale, and that it was sold within the year for $300,000.00. *See* Exhibit 17 to Rothenberg's memorandum in opposition to RDK's motions for summary judgment, Docket Entry # 57.

of the money, and the wife of the trustee purchased the property at a foreclosure sale for a sum alleged to be less than one-third of the property's market value.

In this case, RDK did not loan the money to Rothenberg through a straw man and did not act as both trustee and noteholder. While Gemza was an employee of RDK at the time of the sale, and had an intimate relationship with the president of RDK, Gemza was not acting as both trustee and noteholder at the time of the sale. There is no allegation that RDK actively concealed the fact that Gemza was an employee of RDK, and there is no evidence that Gemza received any benefit from the foreclosure sale. Thus, the instant case is distinguishable from *Holman* and *Earll*. *See also Realty Inv. & Sec. Corp. v. H.L. Rust Co.*, 109 F.2d 456 (D.C.Cir.1939) (trustee was not disqualified and owner was not entitled to have foreclosure sale set aside where the owner of the premises knew that the trustee was an officer of the company through which the noteholders acted; the trustee did not conceal or misrepresent any facts; the trustee owned no part of the notes, nor was he connected by blood or marriage with the noteholders; and it did not appear that the trustee was not agreeable to the owner until default occurred and the time for payment arrived).

This case is also distinguishable from *Kent v. Livingstone*, 83 F.2d 316 (D.C.Cir.1936), on procedural grounds. In *Kent*, the court held that the son of the noteholder was not the proper person to act as trustee under the deed of trust and should not be permitted to continue to act as such if a foreclosure sale was to be carried out. Thus, *Kent* involved a suit to restrain a foreclosure sale under a deed of trust, whereas Rothenberg's suit was filed after the fact and seeks an award of damages. Had Rothenberg sued to restrain the foreclosure sale on the grounds that

Gemza had a conflict of interest, RDK could have obtained an independent trustee and the sale would have gone forward.

Further, the court finds that the prevailing law in the District of Columbia is set forth in *Perry v. Virginia Mortgage and Inv. Co., Inc.*, 412 A.2d at 1199. Under the analysis set forth in *Perry*, the court finds that Gemza complied with the terms of the trust and District of Columbia law; and, given the absence of any showing of fraud, misrepresentation, self-dealing, or other overreaching by Gemza (or of related benefit to the noteholder), RDK has met its burden of proving Gemza's fidelity to the trust.

Accordingly, the court rejects Rothenberg's argument that the foreclosure sale was improperly conducted so as to invalidate her obligation to RDK on the Notes and to provide a basis for recovery against RDK. Summary judgment in favor of RDK as to Count I of Rothenberg's complaint is therefore appropriate.

IV. *Cross Motions for Summary Judgment as to Counterclaim*

RDK admits that its counterclaim asserts the same claim that is at issue in RDK's Second Amended Proof of Claim filed in the debtor's Chapter 11 bankruptcy case.[10] RDK's counterclaim alleges that the sum of $193,693.67 remains owed to RDK under the Notes after the foreclosure sale.[11] This amount consists of $76,078.20 for principal balance, $66,729.08 for prepetition interest, $12,719.85 for postpetition interest, $32,272.75 for prepetition attorneys fees and $5,944.19 for postpetition attorneys fees. RDK also seeks continuing accrued interest and other costs.

 Having found that the foreclosure sale was valid, RDK has a valid defi-

---

10. Apparently RDK filed the counterclaim in anticipation that it would be procedurally easier to address the counterclaim issue in this proceeding rather than separately address it by way of the debtor filing an objection to the proof of claim. The court will hear the issue by way of the counterclaim.

11. As set forth earlier, RDK's claim is based upon 40 promissory notes signed by the debtor, at 19% interest, totalling $231,000. RDK asserts that the balance due as of November 14, 1983, was $263,078.48. The property securing those notes was sold at a public auction on January 31, 1984 for $221,000.

ciency claim against the debtor.[12] The debtor has not challenged the actual dollar amounts alleged to be owed as set forth in the counterclaim filed by RDK and supported by the Affidavit of Ralph D. Kaiser. However, Rothenberg does contend that RDK is not entitled to interest that accrued during the pendency of the involuntary chapter 7 case, that is, from March 14, 1984, to February 14, 1987. This argument has no merit. Upon dismissal of the involuntary petition, the parties were entitled to pursue the rights they possessed prior to the filing. *See* 11 U.S.C. § 349; *Rab v. Safeco,* 556 A.2d 1072, 1076 (D.C.App.1989) (upon determination that debtor is not entitled to bankruptcy protection, parties should be returned to position they were in at commencement of the case) (citing *In re Weathersfield Farms, Inc.,* 34 B.R. 435, 439 (Bankr.D.Vt.1983) (dismissal restores rights of creditor to the position in which they were found at commencement of the case)). Thus, upon dismissal, RDK was entitled to pursue plaintiff for the amount of the deficiency plus any interest that had accrued, including any amounts accrued during the period the involuntary petition remained pending. As the court in *Safeco* stated, "It is as though the debtor [or creditor in this case] had never filed a petition for bankruptcy since the bankruptcy laws were not valid against the affected creditor's claims." *Safeco,* 556 A.2d at 1076. In this bankruptcy proceeding, RDK is asserting a claim pursuant to its rights set forth in the Notes and Deed of Trust, which upon dismissal of the prior case remained unaltered. Thus, interest continued to accrue up to the filing of the instant voluntary Chapter 11 petition and should be included in RDK's claim. Accordingly, RDK's claim properly includes the unpaid principal balance of $76,-078.20 and prepetition interest in the amount of $66,729.08.

■ Remaining unresolved is whether RDK's claim should include postpetition interest and both pre- and post-petition attorneys' fees. Rothenberg contends that RDK is not entitled to attorneys' fees and costs because they have failed to provide adequate documentation of those fees. However, the proof of claim filed by RDK is *prima facie* correct and Rothenberg has not offered any evidence that questions the reasonableness of this amount such as to shift to the creditor the burden of providing that its claim for fees is valid. Therefore, at a minimum, the *prepetition* attorneys' fees, totalling $32,272.25, are included in RDK's claim.

RDK is entitled to postpetition attorneys' fees and postpetition interest only if RDK holds a secured claim and that claim is oversecured. 11 U.S.C. § 506(b); *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re Mitchell,* 81 B.R. 171, 173 (Bankr.D.D.C.1988).[13] However, the court cannot determine if RDK's claim is secured or unsecured until it determines whether the Covenant is void or annulment of the stay is warranted. Moreover, although the parties themselves have not raised the issue, the court questions whether the Covenant is sufficient to create a lien in favor of RDK such that RDK is deemed to be a secured creditor. A Covenant Not to Encumber is generally held not to create a security interest in the property subject to the Covenant. *Sovran Bank v. Aumiller,* 168 B.R. 811 (Bankr. D.D.C.1994) and cases cited therein. The court invites the parties to brief this issue to assist the court in determining whether RDK's claim is secured.

---

**12.** Rothenberg cites to *In re Schewe,* 94 B.R. 938, 947 (Bankr.W.D.Mich.1989) and *In re Reed,* 11 B.R. 258, 276 (D.Ut.1981) in support of her argument that the court (in addition to finding the covenant void) is authorized to expunge the defendant's total claim given defendant's egregious conduct. Even if the court had the ability to take such action, Rothenberg has failed to allege any facts that would support the imposition of such an extreme sanction. If the court ultimately finds that annulment is not warranted, the prop-

er remedy is to deem the Covenant to be without effect and if contempt is adjudicated, award Rothenberg any damages caused by RDK's actions in obtaining and recording the Covenant.

**13.** Debtor's plan provides that if RDK holds an unsecured claim, it is entitled to be paid interest on that claim after the date of the petition at the rate provided for judgments in the District of Columbia. If secured, debtor is entitled to interest allowed under section 506(a) and (b).

20

Because the court finds that RDK has a valid deficiency claim against the debtor, partial summary judgment in favor of RDK as to the existence of a valid claim is appropriate. For the same reasons, debtor's crossmotion for summary judgment on the counterclaim must be denied. The court, however, reserves ruling on the proper amount of RDK's claim until the validity of the Covenant is resolved. The court will set a trial to hear evidence as to the proper amount of RDK's claim after the court determines whether annulment of the stay is warranted (assuming RDK files such a motion) and thus whether the claim is secured or unsecured.[14]

**14.** In the event RDK is secured, it is RDK's burden to establish that it is entitled to postpetition interest by introducing evidence that its claim was oversecured, to what extent, and for what period of time. *Mitchell*, 81 B.R. at 173–74; *In re Grabill Corp.*, 121 B.R. 983, 991 (Bankr.N.D.Ill.1990); *In re Bradley*, 94 B.R. 563, 568–9 (Bankr.N.D.Iowa 1988).