ANDREW D. KIRWAN v. STATE OF CONNECTICUT ET AL.

SUPERIOR COURT            HARTFORD COUNTY            FILE No. 180777

Memorandum filed March 1, 1974

*Salzman & Cantor,* of New Haven, for the plaintiff.

*Day, Berry & Howard,* of Hartford, and *Robinson, Robinson & Cole,* of Hartford, for the defendant Institute of Living.

*Rogin, Nassau, Caplan, Lassman & Borden,* of Hartford, for the defendant Kinsella.

*Robert K. Killian,* attorney general, and *Barney Lapp,* and *Daniel R. Schaefer,* assistant attorneys general, for the defendants state et al.

*Francis J. MacGregor,* assistant attorney general, for the defendant welfare commissioner.

DAVID M. SHEA, J. The plaintiff brought this action in two counts seeking damages for false imprisonment and for negligent medical or psychiatric treatment while he was confined from July 21, 1941, to August 11, 1967, in mental hospitals within Connecticut. A demurrer was sustained in respect to the defendant James H. Kinsella, the present probate judge for the district of Hartford, whose predecessor in office ordered the original commitment of the plaintiff to the mental hospital operated by the defendant Institute of Living on August 6, 1941. Judgment was entered on this demurrer, and the case also has been withdrawn against the defendant Jay E. Rubinow, administrator of the probate courts at the time suit was brought. The remaining defendants are the Institute of Living; Ernest A. Shepherd, commissioner of mental health, and Franklin M. Foote, commissioner of health.

The Institute of Living, which unsuccessfully attempted to raise the defense of the Statute of Limitations by demurrer to the complaint, has filed an answer containing as a first special defense a claim that "it does not appear that the acts complained of on the part of this defendant occurred within three years next nor within six years next before commencement of this action." Presumably

this defense is intended to raise the bar of General Statutes § 52-577, requiring that any action founded upon a tort be brought "within three years from the date of the act or omission complained of," and also of § 52-576, which imposes a six-year limitation "after the right of action accrues" for suits upon a contract.

The plaintiff denied the allegations of this defense and also has pleaded an affirmative reply as follows: "A. Any statute of limitations which might apply was tolled because the plaintiff's decedent was of unsound mind.[1] B. Any statute of limitations which might apply was tolled because the plaintiff's decedent was falsely imprisoned." The demurrer of the defendant Institute to this reply relies on two grounds: (1) The Statute of Limitations would not be tolled by the fact that the deceased plaintiff was of unsound mind. (2) The pleadings show that any false imprisonment by the Institute terminated in 1942, and subsequent false imprisonment by other unrelated parties would not toll the Statute of Limitations so far as the Institute is concerned.

## I

General Statutes § 52-577, which establishes a three-year limitation for tort actions, contains no exceptions for persons who might be under some disability, such as minors or incompetents. A claim that the Statute of Limitations applicable to negligence actions, § 52-584, carries an implied exception for minors was rejected in *Lametta* v. *Connecticut Light & Power Co.*, 139 Conn. 218. Presumably the same result would have been reached if § 52-577 had been the statute under consideration, since it is the source from which § 52-584 has been "carved

---

[1] A motion to substitute David C. Weisberg, temporary executor of the plaintiff, who died on April 14, 1973, in New York, has been filed but does not appear to have been acted upon.

out." Id., 222; *Tuohey* v. *Martinjak,* 119 Conn. 500, 507. The fact that express exceptions for minors are made in some limitation statutes, such as §§ 52-575 and 52-579, was regarded as an indication that the omission of such an exception in others was deliberate on the part of the legislature. *Lametta* v. *Connecticut Light & Power Co.,* supra, 220. The problems which such an exception would create in respect to the policy against enforcement of stale claims embodied in the limitation statutes also were persuasive. Id., 221.

Although the ground of disability relied upon here is that the plaintiff was non compos mentis, the reasoning of the *Lametta* case is fully applicable to such a situation. If the legislature wanted to create an exception for such persons in respect to § 52-577, it could have done so. It is noteworthy that § 52-575, limiting the time for entry upon land to fifteen years, expressly creates an exception for minors and for persons who are mentally unsound or who are imprisoned.

It is the general rule, followed in most jurisdictions, that the court will not read into a Statute of Limitations any exception in favor of minors or persons non compos mentis. 51 Am. Jur. 2d, Limitation of Actions, §§ 178–186. The plaintiff relies upon several cases which appear to take a contrary view. *Triplett* v. *Williams,* 269 Cal. App. 2d 135; *Durham* v. *Coon,* 338 Ill. App. 204; *Brown* v. *Brown,* 93 N.Y.S.2d 63, 76, modified on other grounds, 275 A.D. 1068, aff'd, 302 N.Y. 556; *Battle* v. *Battle,* 235 N.C. 499. It is not clear from the reports of those opinions whether some express statutory provision was made in those states for incompetents. The federal courts have adhered to the "rigid prevailing rule" that insanity does not toll the statute in the absence of an express exception. *Williams* v. *United*

*States,* 228 F.2d 129, 132. There is a minority view on the question, however. 54 C.J.S., Limitation of Actions, § 242.

Considering the applicable precedent and the statutory pattern of our limitation statutes, some of which create exceptions applicable to the situation involved here for certain causes of action, the court is of the opinion that the deficiencies in our limitation statutes can best be remedied by the legislature. *Lametta* v. *Connecticut Light & Power Co.,* 139 Conn. 218, 222.

## II

General Statutes § 52-576, the six-year Statute of Limitations applicable to contract actions, contains an exception as follows: ". . . but persons legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years next after becoming legally capable of bringing such action."

The term "legally incapable" includes minors, who cannot commence a suit in their own names. 2 Locke & Kohn, Conn. Probate Practice § 709. In this state, however, an incompetent person is under no legal disability to bring suit in his own name. Ibid.; *Looby* v. *Redmond,* 66 Conn. 444, 447. Although there are obvious practical difficulties in bringing a lawsuit for persons confined in a mental hospital, there is ample statutory provision for communication and visitation by such persons, and also for access to the courts. General Statutes §§ 17-206g, 17-206h, 17-201. The obstacles are not insurmountable. *Mayock* v. *Martin,* 157 Conn. 56; *Mayock* v. *Superintendent,* 154 Conn. 704.

## III

It is generally held, in the absence of a specific exception such as that contained in General Statutes § 52-575, that imprisonment does not toll the running

of a Statute of Limitations. 51 Am. Jur. 2d, Limitation of Actions, § 192; 54 C.J.S., Limitation of Actions, § 241; note, 24 A.L.R.2d 618, 619.

Nevertheless, the authorities are in agreement that the Statute of Limitations does not begin to run on a cause of action for false imprisonment until termination of the imprisonment. 32 Am. Jur. 2d, False Imprisonment, § 84; 54 C.J.S. 145, Limitation of Actions, § 175; note, 49 A.L.R.2d 922. "The right of action for false imprisonment accrues at the beginning of the imprisonment but does not become complete until the termination thereof, the tort being regarded as divisible." 35 C.J.S. 714, False Imprisonment, § 49. The defendant Institute claims, however, that any false imprisonment for which it was responsible terminated in 1942, according to the complaint, and the subsequent false imprisonment alleged on the part of other persons would not prevent the statute from running in its favor since 1942. In *Alexander* v. *Thompson,* 195 F. 31, it was held that the limitation statute on a suit for false imprisonment against a sheriff began to run at the time he surrendered custody of the plaintiff to an insane asylum. "It is properly conceded that the statutory limitation runs, not from the time imprisonment begins, but from the time it ends, and in our opinion, for the purposes of this case, the imprisonment must be deemed to have ended when the detention for which defendants were responsible ceased; or, otherwise stated, when, if ever, a lawful restraint by the asylum authorities became substituted for that previously exercised . . . by defendants." Id., 33. A similar conclusion was reached in *Kenney* v. *Killian,* 133 F. Sup. 571, a suit against a prosecutor who had authorized temporary custody to be taken of the plaintiff prior to his commitment to a mental hospital by the probate court. The court rejected the contention that

the subsequent confinement in the mental hospital could be considered a continuation of the original wrong. Id., 576. In an analogous situation, it is generally held that the statute starts to run on a false imprisonment suit at the time of release from prison, not at the conclusion of the proceedings from which the imprisonment arose. *Knickerbocker Steamboat Co.* v. *Cusack,* 172 F. 358, 359; *Hackler* v. *Miller,* 79 Neb. 206; *Mobley* v. *Broome,* 248 N.C. 54; *Belflower* v. *Blackshere,* 281 P.2d 423 (Okla.).

In *Matovina* v. *Hult,* 125 Ind. App. 236, relied upon by the plaintiff, it was held that the transfer of custody of the plaintiff therein from city police officers to the county sheriff, who incarcerated him for one more day, did not constitute such a discharge from the claimed false imprisonment as to commence the running of the statute. The court viewed the situation as a single false imprisonment for which all of the participants were jointly liable. It is not clear from the report of the opinion whether the sheriff was holding the plaintiff at the direction of the police officers or by virtue of some other authority. The facts warranted a conclusion that the police officers were participants in the additional day of confinement by the sheriff.

No facts are alleged either in the affirmative reply or in the complaint to indicate that the defendant Institute participated in the confinement of the plaintiff after 1942, nor does it appear that the Institute had any privity or other legal relationship with the other hospitals in which the plaintiff was subsequently confined or with the other parties involved in this later confinement. A claim to the contrary is made in the plaintiff's brief, based on the claimed noncompliance with a statute requiring Probate Court approval of transfers of patients in mental hospitals. The factual basis for this claim does not appear in the pleadings, however.

The special rule pertaining to the running of the Statute of Limitations in an action for false imprisonment would not pertain to the claim for malpractice set forth in the second count of the complaint. The circumstance of false imprisonment would not toll the statute in respect to any other causes of action. The portion of the affirmative reply which appears to claim false imprisonment as a basis for tolling the statute in respect to both causes of action, false imprisonment and malpractice, is unsound.

The demurrer is sustained.