Kevin O'FALLON, Plaintiff and Appellant,

v.

Joan POLLARD, City of Burlington, Inc., and Dave Wallace, Defendants and Appellees.

Civ. No. 870300.

Supreme Court of North Dakota.

Aug. 16, 1988.

Kent L. Johnson, Minot, for plaintiff and appellant.

Richard H. McGee of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendants and appellees.

VANDE WALLE, Justice.

Kevin O'Fallon appealed from a summary judgment dismissing his action for damages against the City of Burlington, Joan Pollard, Burlington's Chief of Police, and Dave Wallace, a Dunn County deputy sheriff. We affirm.

On June 3, 1984, O'Fallon attended a wedding dance in Burlington. Wallace was hired by Pollard to work with her in providing security at the dance. Criminal charges were brought against O'Fallon arising out of an incident at the dance, but he was subsequently acquitted on August 14, 1985, following a trial on those charges.

On June 3, 1987, O'Fallon filed this lawsuit for damages against the defendants, alleging that while at the dance he was assaulted, falsely arrested, and wrongfully imprisoned by Pollard and Wallace. The trial court granted the defendants' motion for a summary judgment of dismissal on the ground that O'Fallon's complaint was barred by the two-year statute of limitation under Section 28-01-18(1), N.D.C.C.:

"... The following actions must be commenced within two years after the claim for relief has accrued: ...

"An action for libel, slander, assault, battery, or false imprisonment."

On appeal O'Fallon asserts that a three-year statute of limitation applies and that his complaint therefore was timely. O'Fallon relies upon Section 28-01-17(1), N.D.C.C., and Section 32-12.1-10, N.D.C.C. The former section provides that an action against a sheriff, coroner, or constable for liability incurred in his or her official capacity must be commenced within three years. The latter section provides that an action brought against a political subdivision under Chapter 32-12.1, N.D.C.C., must be commenced within three years. These statutory provisions clearly set a maximum period of three years within which applicable actions can be brought against the designated defendants.

■ Although it is argued that where there is a question of what statute of limitation is appropriate the longer time applies, when two statutes relating to the same subject matter appear to be in conflict, they should, whenever possible, be construed to give effect to both if such can be done without doing violence to either. *City of Fargo, Cass County v. State*, 260 N.W.2d 333 (N.D.1977). But the cardinal rule of statutory interpretation is that the interpretation must be consistent with legislative intent and done in a manner which will accomplish the policy goals and objectives of the statutes. E.g., *Heartview Foundation v. Glaser*, 361 N.W.2d 232 (N.D.1985). Furthermore, all rules of statutory interpretation are subservient to a determination of legislative intent. *Fargo Education Association v. Fargo Public School District No. 1*, 291 N.W.2d 267 (N.D.1980).

In this instance there is no doubt as to the intent of the Legislature. Chapter 32-12.1, N.D.C.C., and its predecessor, 1975 N.D.Laws, Chapter 295, were enacted to limit the liability imposed upon political subdivisions by the decision in *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D. 1974). See, e.g., *Fastow v. Burleigh County Water Resource District*, 415 N.W.2d 505 (N.D.1987).

In *Kitto*, which reversed a long line of cases holding that political subdivisions were immune from suit by virtue of the provisions of Article I, Section 9, North Dakota Constitution, this court specifically provided that the abolition of government immunity should be applicable to the parties to the action and to those causes of action arising fifteen days after adjournment of the Forty-fourth State Legislative Assembly. The decision to apply the decision prospectively, except for the parties, was, in part, "to allow the legislature opportunity to adopt such legislation as it deems advisable to mitigate any hardships arising from this decision." *Kitto, supra*, 224 N.W.2d at 804.

■ A review of the legislative history leaves no doubt that the Legislature intended to limit the liability of political subdivi-

sions arising from the *Kitto* decision. It would stand the legislative intent on its head to conclude that the enactment of the three-year statute of limitation under Section 32-12.1-10, N.D.C.C., was intended to extend the time in which actions could be brought against a political subdivision although a shorter statute of limitation applied to other defendants. Section 32-12.1-10, N.D.C.C., specifies the maximum time in which an action may be brought against a political subdivision. It does not apply where a more restrictive statute of limitation is applicable.

■ Thus we conclude, as did the trial court, that the two-year statute of limitation, under Section 28-01-18(1), N.D.C.C., which specifically applies to assault and false-imprisonment actions, constitutes the applicable statute of limitation in this case. That specific two-year statute-of-limitation provision, which falls within the three-year parameter for bringing actions against political subdivisions or sheriffs and constables under Section 32-12.1-10, N.D.C.C., and Section 28-01-17(1), N.D.C.C., respectively, must prevail.

O'Fallon further asserts that the time specified in the statute limiting the bringing of a false-imprisonment action does not commence to run until the criminal proceedings related to the false imprisonment are terminated. O'Fallon cites two Oregon opinions in support of his assertion: *Guyot v. Multnomah County*, 51 Or.App. 373, 625 P.2d 1344 (1981); and *Lane v. Ball*, 83 Or. 404 163 P. 975 (1917). These cases, which involve actions for malicious prosecution rather than false imprisonment, are unpersuasive.

■ False imprisonment is considered a continuing tort which commences at the time of the false arrest and continues until the unlawful detention ceases. *Adler v. Beverly Hills Hospital*, 594 S.W.2d 153, 155 (Tex.Civ.App.1980). The general rule, which we adopt and apply to this case, is that the time specified in the statute of limitation for a false-imprisonment action commences to run from the termination of the plaintiff's incarceration, irrespective of whether or not related criminal proceedings

have been concluded. *Adler v. Beverly Hills Hospital, supra; Stafford v. Muster,* 582 S.W.2d 670 (Mo.1979); *Kirwan v. State,* 31 Conn.Supp. 46, 320 A.2d 837 (1974); *Collins v. County of Los Angeles,* 241 Cal.App.2d 451, 50 Cal.Rptr. 586 (1966); *Belflower v. Blackshere,* 281 P.2d 423 (Okla.1955); see also, Annot. 49 A.L.R.2d 922 (1956).

O'Fallon was released on bond shortly after his arrest on June 3, 1984, and the two-year period began to run at that time. It is undisputed that O'Fallon's release from incarceration occurred more than two years before he filed this lawsuit against the defendants.[1] Therefore, the trial court correctly concluded that O'Fallon's complaint is barred by the statute of limitation.

The summary judgment of dismissal is affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and MESCHKE, JJ., concur.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Michael J. Geiermann.

Pearce & Durick, Bismarck, for defendant and appellee; argued by Gary R. Thune.

---

1. O'Fallon does not raise as an issue whether one's release from imprisonment by posting bail should affect the running of the statute of limitation for a false-imprisonment action. Although we do not decide this issue, at least one court has determined that, in the absence of a continued deprivation of the plaintiff's liberty, the statute of limitation for a false-imprisonment action begins to run on the date that the plaintiff is released from imprisonment on bail. *Collins v. County of Los Angeles,* 241 Cal.App.2d 451, 50 Cal.Rptr. 586, 591 (1966).