**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4131-19

TONY MITCHNER,

    Plaintiff-Appellant,

v.

TROOPER MARK
MARCHATERRE, in his
individual capacity, and
DSG TIMOTHY MEYERS,
in his individual capacity,

    Defendants-Respondents.

_____

Submitted May 17, 2021 – Decided June 4, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8715-17.

Franzblau Dratch, PC, attorneys for appellant (Brian M. Dratch, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Francis A. Raso, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Tony Mitchner appeals from a June 5, 2020 order granting summary judgment in favor of defendant Trooper Mark Marchaterre[1] and dismissing his claims in their entirety. We affirm.

In June 2014, New Jersey State Police officers Marchaterre and Meyers met with a confidential informant (CI). The CI previously provided reliable information to the police, resulting in successful narcotics investigations and multiple drug arrests. According to the CI, an individual named "Slim" was selling controlled dangerous substances (CDS) out of a three-family home in Newark. The CI described Slim "as a medium height black male approximately . . . 150-160 pounds, with dark color skin and with short hair" who lived in an apartment on the first floor of the home.

Based on this information, Marchaterre and Meyers arranged for the CI to purchase CDS from Slim as part of a controlled purchase. The officers witnessed the CI meet with a black male, matching Slim's description, to

---

[1] Plaintiff stipulated to dismissal of all claims against defendant DSG Timothy Meyers, and he is not a party on appeal.

purchase crack cocaine. According to the CI, Slim kept drugs in the living room of the first-floor apartment.

Marchaterre and Meyers conducted three more controlled purchases through the CI. During the second controlled purchase, the CI advised the officers that Slim "ran up the stairs to the second floor" and returned with crack cocaine. The officers conducted a third controlled purchase to confirm whether the drugs were kept on the first or second floor of the home. Marchaterre and Meyers saw Slim call to the CI from a second-floor window before going downstairs to let the CI inside. Slim returned to the second floor to retrieve drugs for the CI. During the fourth controlled purchase, Slim stuck his head out a first-floor window and asked how much the CI needed to buy. After the CI replied, Slim appeared on the front porch with the drugs.

Based on the information from the controlled purchases, the officers determined the CI was credible. Marchaterre found probable cause to believe Slim conducted an illegal drug operation from the first and second floors of the home.

Marchaterre's findings were memorialized in two affidavits. The affidavits requested two warrants to search the first and second floors of the Newark home "[i]ncluding all occupants therein, who [we]re deemed to be in

3

control of the premises and/or reasonably believed to be involved in criminal activity," and seize all CDS and related evidence. On June 26, 2014, a judge issued the requested search warrants.

On June 30, 2014, the officers executed the search warrants. While securing the home, the officers encountered plaintiff and a female friend on the second floor of the home. The officers found plaintiff walking from the kitchen to his second-floor bedroom, carrying eggs and toast, and the female friend inside one of the bedrooms. Plaintiff immediately told officers, "She had nothing to do with it." In an unsolicited statement to the police, plaintiff said the female friend was his "company" and "spent the night" but did not live in the house.[2]

After securing the premises, the officers performed "a methodical search of both the first and second floor residences" and uncovered multiple weapons, ammunition, drug paraphernalia, and drugs. Plaintiff was arrested for possessing the items found in and around his second-floor apartment. Slim was not in the home during the officers' search.

---

[2] Plaintiff paid $400 per month to the landlord of the three-family house for the right to occupy a middle bedroom on the second floor of the home. Plaintiff had access to the second floor living room and kitchen and the common areas within the building.

4

The matter was presented to a grand jury on September 8, 2014. Before the grand jury, Marchaterre described the events leading to plaintiff's arrest. He also told the grand jury about plaintiff's spontaneous statement that the female friend "had nothing to do with anything . . . . She was just sleeping over." Based on plaintiff's statement, Marchaterre explained "[plaintiff] took possession of all the items in the house," and the officers decided not to charge the female friend.

On September 15, 2014, the grand jury returned an indictment charging plaintiff with three counts of second-degree possession of a firearm, N.J.S.A. 2C:39-7(b).

In July 2015, the prosecutor determined plaintiff's criminal case would have to be re-presented to the grand jury because plaintiff was never charged with possessing an assault weapon, a high-capacity magazine, or CDS. On September 19, 2015, the grand jury returned a superseding indictment charging plaintiff with second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) (count one); second-degree possession of an assault firearm without a license, N.J.S.A. 2C:39-5(f) (count two); third-degree possession of a rifle or shotgun without a firearms purchaser identification card, N.J.S.A. 2C:39-5(c)(1) (count three); third-degree possession of CDS, N.J.S.A. 2C:35-10(a) (count four); third-degree possession of CDS with the intent to distribute, N.J.S.A.

2C:35-5(a)(1); (b)(3) (count five); fourth-degree possession of drug paraphernalia with the intent to distribute, N.J.S.A. 2C:36-3 (count six); fourth-degree possession of hollow nose or dum-dum bullets, N.J.S.A 2C:39-3(f) (count seven); and fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count eight).

On August 10, 2016, the prosecutor recommended dismissal of all charges against plaintiff. The prosecutor concluded two counts "must be dismissed due to the exemption from the statute which allows for any person to keep a[nd] carry a handgun/rifle about his residence" and "the remaining counts of the [i]ndictment must be dismissed because the items recovered were found in locations accessible to multiple occupants within the residence." The prosecutor determined "the State could not sustain its burden beyond a reasonable doubt and a dismissal of the [i]ndictment in its entirety [wa]s appropriate." On August 22, 2016, the charges against plaintiff were dismissed and he was released after spending twenty-six months in jail.

On December 11, 2017, plaintiff filed a civil complaint against Marchaterre and Meyers, alleging wrongful arrest, false imprisonment, and malicious prosecution pursuant to the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, based on his wrongful incarceration.

On December 29, 2019, Marchaterre and Meyers moved for summary judgment, arguing plaintiff's claims were procedurally and substantively deficient. Plaintiff admitted his false arrest claim was filed beyond the two-year statute of limitations under N.J.S.A. 2A:14-2. After dismissing his claims against Meyers, plaintiff proceeded on his false imprisonment and malicious prosecution claims against Marchaterre.

After hearing counsels' arguments, the motion judge issued a June 5, 2020 order and written decision granting summary judgment to Marchaterre. The judge determined Marchaterre had probable cause to believe plaintiff committed the offenses. Therefore, plaintiff was unable to prevail as a matter of law on his false arrest and malicious prosecution claims. The judge also found plaintiff's false imprisonment claim was untimely.

On appeal, plaintiff claims the judge erred in dismissing his claim for false imprisonment as time barred because the two-year statute of limitations commenced upon the date of his release from prison rather than the date of his indictment. Additionally, plaintiff contends the judge erred in granting summary judgment on his malicious prosecution claim because there were genuine issues of material fact. We disagree.

A-4131-19

We review a grant of summary judgment using the same standard that governs the motion judge's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38; accord R. 4:46-2(c)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

We first address plaintiff's claim the judge erred in dismissing his malicious prosecution claim because there were material factual disputes precluding the entry of summary judgment. Plaintiff claims he provided

sufficient evidence Marchaterre acted with malice and lacked probable cause to arrest him. Plaintiff also claims Marchaterre misrepresented plaintiff's pre-arrest statements regarding his female friend when the officer testified during the grand jury proceeding.

Malicious prosecution arises when a person "recklessly institutes criminal proceedings without any reasonable basis." Lind v. Schmid, 67 N.J. 255, 262 (1975). To establish a claim for malicious prosecution, a party must establish: "(1) a criminal action was instituted by [the] defendant against [the] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)). "The essence of the cause of action is lack of probable cause, and the burden of proof rests on the plaintiff. The plaintiff must establish a negative, namely, that probable cause did not exist." Lind, 67 N.J. at 262-63. Significantly, "probable cause is an absolute defense to . . . false arrest, false imprisonment, and malicious prosecution claims." Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).

Here, there was sufficient probable cause to arrest and prosecute plaintiff for the crimes. There were several controlled purchases of suspected CDS in

the building where plaintiff resided. The CI described the controlled purchases, indicating the individual selling the drugs ascended to the second floor of the three-family home and then returned to the first floor with the drugs.

In conducting a search pursuant to lawfully issued warrants, the officers found plaintiff returning to his bedroom after preparing food in a shared kitchen on the second floor of the house. Plaintiff told the officers he lived on the second floor of the home and had access to common areas throughout the house. The officers discovered drugs, drug paraphernalia, and ammunition in the common areas. Plaintiff did not dispute these facts.

Because plaintiff lived on the second floor of the home and accessed common areas within the house, it was reasonable for Marchaterre to assume plaintiff had knowledge of, and control over, the weapons and drugs found on the second floor and in the common areas and, thus, possessed the illegal items. See State v. Spivey, 179 N.J. 229, 236-37 (2004) (citing State v. Schmidt, 110 N.J. 258, 270 (1988)) ("A person constructively possesses an object when, although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time."). Based on these uncontroverted facts, Marchaterre "reasonably believed

10

that [p]laintiff had knowledge of the illicit contents of the apartment's common areas, had access to such contents, and exercised dominion and control over such areas" sufficient to establish probable cause "for the institution of proceedings against [p]laintiff."

We reject plaintiff's argument probable cause was limited to arrest of Slim and no other occupants of the house. The affidavits submitted in support of the search warrants established probable cause to believe there were drugs being distributed from the home without specific reference to Slim. The search warrants expressly authorized the officers to seize "[a]ny and all controlled dangerous substances, as well as any other items which would indicate additional suspects" and allowed the officers to enter the home to recover unlawful items. Based on the language in the search warrants, there would have been probable cause to arrest anyone in the three-family home provided there was evidence linking the individual to the recovered items.

Here, plaintiff was in the home during the officers' search and admitted he had access to areas in the home where drugs and weapons were found. Therefore, the officers had probable cause connecting plaintiff to the seized items.

11

We also reject plaintiff's contention Marchaterre's grand jury testimony and deposition testimony were contradictory and, therefore, Marchaterre materially misled the grand jury. Having reviewed Marchaterre's grand jury and deposition testimony, we disagree the statements were contradictory. Even if the statements were contradictory, Marchaterre's statements articulated probable cause to support plaintiff's arrest based on the discovery of drugs and weapons in the home and plaintiff's admitted access to areas where the contraband was found.

Nor did plaintiff present any evidence prosecuting him for the drugs and weapons charges was actuated by malice. Plaintiff never spoke to Marchaterre or Meyers prior to his arrest on June 30, 2014. Nor had plaintiff spoken to either officer after his arrest. In fact, plaintiff could not recall if Marchaterre and Meyers were the arresting officers. Because there was probable cause to arrest plaintiff, and plaintiff failed to demonstrate his arrest was motivated by malice, plaintiff could not sustain a cause of action for malicious prosecution, and the motion judge properly granted Marchaterre's motion for summary judgment.

We next consider dismissal of plaintiff's false imprisonment claim based on the expiration of the two-year statute of limitations. Plaintiff claims the

12

statute of limitations for his false imprisonment claim commenced upon his release from jail and therefore his complaint was timely. We disagree.

"False arrest, or false imprisonment, is the constraint of the person without legal justification." Mesgleski v. Oraboni, 330 N.J. Super. 10, 24 (App. Div. 2000) (citing Pine v. Okzewski, 112 N.J.L. 429, 431 (E.&A. 1934)). To establish a claim for false imprisonment, a party must demonstrate: "(1) 'an arrest or detention of the person against his or her will' and (2) 'lack of proper legal authority or legal justification.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009). "[A]n action for false imprisonment must be brought within two years . . . ." Earl v. Winne, 14 N.J. 119, 132 (1953); see also N.J.S.A. 2A:14-2 ("Except as otherwise provided by law, every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued . . . .").

Plaintiff relies on several out-of-state cases in asserting a claim for false imprisonment commences when the unlawful detention ceases. See, e.g., O'Fallon v. Pollard, 427 N.W.2d 809, 811 (N.D. 1988) (citing Adler v. Beverly Hills Hosp., 594 S.W.2d 153, 155 (Tex. Civ. App. 1980)) ("False imprisonment is considered a continuing tort which commences at the time of the false arrest

and continues until the unlawful detention ceases."); Belflower v. Blackshere, 281 P.2d 423, 424 (Okla. 1955) ("As a general rule an action for false imprisonment accrues at, and limitations run from, termination of the imprisonment . . . ."); Collier v. Evans, 406 S.E.2d 90, 92 (Ga. Ct. App. 1991) (quoting Reese v. Clayton Cnty., 363 S.E.2d 618, 620 (Ga. Ct. App. 1987)) ("The action must be brought within two years of its accrual, . . . which is from the release from imprisonment.").

Other states opt for an earlier accrual date. See, e.g., Freeman v. Holyfield, 179 So.3d 101, 105 (Ala. 2015) (quoting Wheeler v. George, 39 So.3d 1061, 1084 (Ala. 2009)) (citing Jennings v. City of Huntsville, 677 So.3d 228, 230 (Ala. 1996) ("A claim of false imprisonment accrues on the date of arrest."); Stone v. Wright, 133 N.E.3d 210, 216 (Ind. Ct. App. 2019) (rejecting the "continuing wrong" theory and holding the statute of limitations runs from when plaintiff knew or could have discovered the injury).

The United States Supreme Court determined the date of accrual for a false imprisonment claim under federal law, 42 U.S.C. § 1983, "commences to run, when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." Wallace v. Kato, 549 U.S. 384, 391 (2007). Thus, the United States Supreme Court determined the

A-4131-19

statute of limitations on a false imprisonment claim does not begin upon release from custody but rather when legal process is initiated based on the definition of false imprisonment as detention without legal process. Id. at 389-90. Once legal process has begun, "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Id. at 390.

The motion judge properly determined plaintiff's false imprisonment claim was untimely, finding "a cause of action generally accrues 'when facts exist which authorize one party to maintain an action against another'" and false imprisonment does not require a showing "that an underlying criminal action has terminated in his [or her] favor." We are unpersuaded by plaintiff's reliance on case law from other states because the statutes governing claims for false imprisonment in those states have no bearing on the applicable New Jersey statute.

Here, plaintiff's false imprisonment claim accrued, at the latest, upon the issuance of the superseding indictment. Since plaintiff's complaint was filed more than two years after plaintiff's superseding indictment, his false imprisonment claim was untimely.

Even if the two-year statute of limitations commenced upon plaintiff's release from jail, which we reject, there was overwhelming evidence of probable cause, entitling Matchaterre to summary judgment as a matter of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4131-19